## LION COAL CO. v. BUNTEN, County Treasurer, etc.

(District Court, D. Wyoming. May 13, 1922.)

No. 1226.

1. Courts ⚖262(4)—Authority of federal court of equity to enjoin collection of state tax.

To authorize a federal court of equity to enjoin collection of a tax imposed by state authority as confiscatory, it must appear that there is a systematic overvaluation or undervaluation of certain classes of property, which defeats the constitutional or statutory requirement of uniformity.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Taxation ⊜⇒40(8)—Taxation of coal mines under Wyoming law properly levied on value of coal after it is mined.**

Under Const. Wyo. art. 15, § 3, providing that all mines from which valuable deposits are produced shall be taxed in addition to the surface improvements, "and in lieu of the taxes on the lands on the gross products thereof," in proportion to the value thereof, the annual tax on a coal mine may properly be levied on the assessed value of the coal produced during the year after it has been taken from the mine, though it is shipped and sold as fast as produced, and the assessment is not illegal because such value includes the cost of mining.

**3. Taxation ⊜⇒611(5)—Bill for injunction to restrain collection of tax held not to state cause of action.**

Bill for an injunction to restrain collection of a tax *held* not to allege facts which entitled complainant to equitable relief on the ground that its property was assessed at a higher percentage of actual value than other classes of property.

In Equity. Suit by the Lion Coal Company against Matthew Bunten, County Treasurer and ex officio Tax Collector of Sweetwater County, Wyo. On motion to dismiss bill. Motion granted.

T. S. Taliaferro, Jr., of Rock Springs, Wyo., for plaintiff.

W. L. Walls, Atty. Gen., of Wyoming, D. G. Thomas, Co. and Pros. Atty., of Rock Springs, Wyo., and W. E. Mullen, of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge. The above-entitled cause is a suit in equity, by which the plaintiff seeks to restrain the collection of an alleged illegal tax. The matter is before the court upon a motion to dismiss the bill of complaint upon three grounds: First, that the bill fails to allege any matter of equity entitling the plaintiff to the relief prayed for; second, that the bill fails to allege facts sufficient to constitute a valid cause of action in equity; and, third, because of a nonjoinder of necessary and indispensable parties defendant.

The latter or third ground of the motion will not be considered by this court, further than to suggest the belief that, under the statutes of the state of Wyoming, the proper party has been made defendant, and is the only party necessary to entitle plaintiff to the relief sought, in the event it should be found that the plaintiff is otherwise entitled to such relief. The other two grounds of the motion being failure to allege a matter of equity entitling the plaintiff to the relief prayed for and the failure of the bill of complaint to state facts sufficient to constitute a cause of action in equity, it seems to this court that they may well be considered as one ground.

An examination of the bill of complaint, first as to jurisdictional facts, discloses that the plaintiff is a citizen and resident corporation of the state of Utah, authorized to conduct business under the laws of the state of Wyoming; that the cause is brought against the county treasurer and ex officio tax collector of Sweetwater county, in the state of Wyoming; that the plaintiff is the owner of certain real estate in said county and is engaged in the occupation of coal mining; that during the calendar year of 1920 it extracted in excess of 291,000 tons of coal from the lands described; that the state board of equalization

of the state of Wyoming assessed the said coal at the value of $3 per ton, and that a tax was thereupon assessed aggregating in excess of $16,000, which the defendant tax collector threatens to enforce through the laws and with the penalties provided by the statutes of the state of Wyoming for failure to pay taxes so assessed; and that the plaintiff under protest has paid to the said tax collector an amount in excess of $11,000 as part payment upon said tax so assessed, and alleges that the payment of the balance, if enforced by said tax collector, will work a great and irreparable injury to the plaintiff, which will amount to a confiscation of its property in violation of law.

[1] The bill further sets forth the constitutional and statutory provisions of the state of Wyoming with relation to assessment for taxation and taxation generally, and particularly the provisions with reference to the assessment and taxation of the products of mines in the state. The bill contains no complaint in regard to any of these provisions, but is specifically directed to the administration of the assessment and taxation provisions by the state board of equalization.

It does not appear from the citation of authorities by counsel on either side that the exact question presented in the cause has been considered by the Supreme Court of Wyoming, although there are decisions of that court holding generally that the equitable jurisdiction of courts will not be invoked to enjoin the collection of tax assessments, unless illegal taxes have been levied, or the transaction is one which brings it within the classification of fraud, mistake, or something of a similar nature. We may therefore well look for a rule as laid down by the federal courts, if any there be, which will apply to the case at bar, and in fact counsel for plaintiff relies upon several of these cases in supporting his bill of complaint against the attack made by the motion to dismiss.

Before going into a discussion of what may be denominated the "gravamen of the offense" set forth in plaintiff's bill, it might be well to briefly review the leading federal cases upon which the plaintiff relies in order to ascertain, if possible, under what circumstances the federal courts have intervened to grant equitable relief in tax cases, and as to whether or not the plaintiff by its bill is brought within the rule. In the opinion of this court the rule contended for by plaintiff may be considered as being contained in three leading cases: Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903; Taylor v. Louisville & N. R. Co., 88 Fed. 350, 31 C. C. A. 537; and Greene v. Louisville Ry. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

In the last-named case the Supreme Court has cited with approval the case of Taylor v. Louisville, supra, which is a decision of the Circuit Court of Appeals of the Sixth Circuit, and in which Judge Taft, now Chief Justice of the Supreme Court, voiced the opinion of the court. As the plaintiff has relied strongly upon this particular case to support its contentions as set forth in the bill, an examination of the general principles there disclosed will probably suffice to discover the rule, if any, which would entitle plaintiff to the relief prayed for in its bill.

In the Taylor Case Judge Taft has discussed generally the circumstances under which federal courts should assume equitable jurisdiction in tax cases, and this court considers it unnecessary in the present discussion to follow generally his reasoning along this line, but to consider particularly that feature of the case discussed which must bring the case at bar within the rule there laid down upon the ground that the cases are analogous in point of facts. In that case the court found as a matter of fact that through an intentional, systematic, and uniform administration of the assessment and education laws of the state of Tennessee the complainant's property and other property of a similar character had been assessed at 100 per cent. of value for taxation purposes, and that other general classes of property had been intentionally, systematically, and uniformly assessed at less than 100 per cent. value for taxation purposes; that this policy was pursued in each county of the state where the property of the class owned by complainants was located; and that the law was administered in said manner for the purpose of reducing the proportionate burden of taxes upon the general classes. Another element taken into consideration by the court in that case in retaining jurisdiction was that to refuse to retain said jurisdiction would be to require the complainant, a railroad company, to go before the taxing authorities in each county in order to secure a proportionate increase in the taxation of other classes of property, which would be a futile course, and would involve such an enormous expense and length of time to follow it that it could not be considered as an adequate remedy.

Considering the fact that the motion to dismiss in the case at bar is virtually in the nature of a demurrer, which searches the record here, it may be enlightening to quote a portion of the opinion in that case, found in 88 Fed. 365, 31 C. C. A. 552:

"The question presented is, then, whether, when the sole object of an article of the Constitution is being flagrantly defeated, to the gross pecuniary injury of a class of litigants, and one of them appeals to a court of equity for relief, it must be withheld because the only mode of granting it will involve an apparent departure from the method marked out by the Constitution and the law for attaining its sole object. We say 'apparent' departure from the constitutional method, because that instrument contemplated a system in which all property should be assessed at its real value. It did not intend that a large part should be assessed at 75 per cent., and a smaller part at 100 per cent. The method of assessing one species of property cannot be said to be constitutional, without having regard to that pursued with other species; for the essence of the constitutional requirement is uniformity, and uniformity cannot be affirmed to exist without a due regard to the methods of assessing all species. Therefore, to enjoin the enforcement of the prescribed method of assessment as to one species of property, when there is a departure from it as to all others, if the injunction secures uniformity as to all, is not so great a violation of the method really prescribed as that involved in a continuance of the existing conditions and the denial of relief to the injured taxpayer. The court is placed in a dilemma, from which it can only escape by taking that path which, while it involves a nominal departure from the letter of the law, does injury to no one, and secures that uniformity of tax burden which was the sole end of the Constitution. To hold otherwise is to make the restrictions of the Constitution instruments for defeating the very purpose they were intended to subserve. It is to stick in the bark, and to be blind to the substance of things. It is to sacrifice justice to its incident. The same dilemma has been presented to other courts. They have not

always taken the same horn. There is a conflict of authority, but we are glad to say that the adjudications of that court whose decision we must follow support the views we have above expressed."

Then follows in the opinion a discussion of the views of other courts, including a number of cases by the United States Supreme Court. In the closing portion of the opinion (88 Fed. at page 374, 31 C. C. A. 561), the court analyzes its conclusion as a basis for a decree in favor of the plaintiff in the following language:

"If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully assessed property. And this is true although the particular board assessing the complainant's property may have been wholly free from fault of fraud or intentional discrimination. Therefore the injunction might issue against the assessment upon the fully assessed property, as void altogether, until a new and uniform assessment upon all property according to law could be made."

If it be true that a formal compliance with the law by two separate assessment boards would create such an inequality or discrimination as would constitute a fraud upon the right of property owners, it might logically follow that the same condition would prevail, where the assessment for taxation purposes was made on different classes of property by the same board, and therein would lie the relief sought by the plaintiff, if at all.

This court now reaches the point at which it must be decided as to whether or not the bill of complaint sets up a condition of facts which, standing as a pleading under the rule laid down, brings it within the rule, and this necessitates a careful examination of that portion of the bill which states the acts of which the complainant feels aggrieved. This particular phase of the bill of complaint may be found in the fourteenth and fifteenth clauses, which may be analyzed for the purpose of brevity as alleging materially the following facts:

That the state board of equalization fixed the value of the complainant's coal at $3 per ton, which was a false, fraudulent, confiscatory, unlawful, and ununiform method, and a method forbidden and prohibited by the laws of the state of Wyoming, in that the board had fixed such valuation by taking the sale prices of said coal in foreign markets and foreign states, thereby including as a part of the value of said coal the costs, charges, and expenses of making sales and disposing of the gross product in the aforementioned markets and communities; that the method by which the plaintiff mines its coal is to bring it to the surface, and, with that production for a period of two weeks disposed of, to use the proceeds in paying its miners for the labor in such production for a two-week period, and therefore its operation of producing coal is virtually a separable one into 24 different transactions throughout a year; that on account of this method there is on hand at no time during the year more than a small portion of the product, and that on account of other classes of property being assessed as found at one particular time of the year, the product of the mine is, as compared with such other classes of property, not uniformly assessed; that the as-

sessment as so made includes the wages and expenses of extracting the coal and bringing the same to the mouth of the mine, which was erroneous and violative of the plaintiff's rights, in that it exceeded the value of the coal as it lay in the ground and the value of any coal which the plaintiff had on hand at any one time, either at the mouth of the mine or elsewhere, except as in the original formation; that on account of such assessment by said board the coal product of the plaintiff was unfairly assessed for an amount in excess of its real value, while other property in the state was assessed at a rate not exceeding 70 per cent. of its real value; that on account of the peculiar formation in which plaintiff's coal rests, thereby making the process of mining more difficult, the value of plaintiff's coal is 5 cents less per ton than the value of the coal of other mine owners in the state, which the said board of equalization has intentionally disregarded.

This court believes it will be sufficient to dispose of the last-mentioned contention of the plaintiff by saying that the allegations attempting to sustain it are not sufficient in setting forth in specific detail any alleged discrimination in comparison with other coal mine products in the state, and this portion of the bill will therefore not be discussed further. This leaves for consideration four elements of the bill of complaint, so far as it purports to allege sufficient facts to entitle plaintiff to relief in a court of equity.

The first is that allegation of the bill which charges that the board has fixed a valuation for assessment purposes by taking the sale prices of said coal in foreign markets and foreign states, thereby including as a part of that valuation, costs, expenses, and charges of making such sales. This is answered by the suggestion of counsel for defendant in that the subsequent paragraphs of the bill in effect negative this allegation, for such subsequent paragraphs allege that the assessed valuation is greater than the real value by virtue of the inclusion in such assessed valuation of expenses of bringing the coal to the mouth of the mine. In these subsequent paragraphs the amount of the assessed valuation in excess of the real value claimed by plaintiff is fixed definitely by alleging that certain elements were improperly and erroneously included by the board in fixing the real value, which elements are specifically named. Yet the element of including costs and expenses of making sales in foreign markets is not contained in these subsequent paragraphs where the real value of the product contended for is fixed by plaintiff. This charge, therefore, is inconsistent with the subsequent allegations of the bill, and the contention of counsel for defendant with relation thereto will be sustained.

[2] The second is the matter of the coal produced during a year in the form of 24 different transactions, and the specific property not therefore being on hand or in the possession of the owners at any one time when the assessment is made, as in the case of other classes of property in the state. I take it that this is fairly well answered by reference to the provision of the state Constitution concerning the taxation of mines. This is found in article 15, § 3, of that document, and is as follows:

"All mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements, and in lieu of taxes on the lands, on the gross product thereof, as may be prescribed by law: Provided, that the product of all mines shall be taxed in proportion to the value thereof."

It will be noted that this specifically provides for a tax on the gross products of the mine in lieu of a tax on the lands. This constitutional provision recognizes that the products of mines within the state are of a different class, especially for the purposes of taxation, and should be taxed in a different manner than other classes of property. This principle of classification has been recognized by the courts as proper, even in many instances where not specifically authorized through a constitutional provision. The rule is clearly stated in the case of Pacific Express Co. v. Seibert, 142 U. S. 339, at page 351, 12 Sup. Ct. 250, 253 (35 L. Ed. 1035), in the following language:

"This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principle of uniformity and equality in taxation and of a just adaptation of property to its burdens."

If this premise be correct, then, in order that the taxing officials may carry it out under the provisions of the statute in fixing the assessment for taxation upon the "gross products," it becomes necessary to take into consideration the entire product. The method contended for by plaintiff in this case would not be an assessment upon the gross product, but only upon a small portion of the gross product, or in effect that proportion which might be found in the possession of the mine owner at the time the assessing official purported to make his assessment. The plan of adopting the product of the preceding year as the basis of the tax for the current year is merely a ministerial function of the board clearly made necessary for the purpose of ascertaining the gross product for a given period, to the end that the constitutional and statutory provisions may be carried into effect.

The third is that the inclusion in the assessment valuation of the expense of bringing the coal to the mouth of the mine, either on account of the so-called semimonthly pay rolls and the disposal of the property during the same periods, or on account of that expense not being properly a part of the value of the coal at the mouth of the mine, is erroneous, and this charge cannot be sustained as being violative of any of plaintiff's rights. The cost of production of any property is certainly a part of its value as a finished product. In many instances the value of the article produced rests much more largely in the cost of production than in the intrinsic value of the substances of which it is composed. In this Western country, the court takes it as almost an elementary proposition that, in fixing the value of a steer at a certain time the cost of maintaining it, including the feed which it has eaten in order to bring it to its then present condition, must be an essential

part of its value. This court is unable to discover a satisfying differentiation between the production of a steer for the consumer and a ton of coal for the consumer, so far as the expense of producing it is concerned. An unmined ton of coal is of as little value intrinsically as an unborn calf. Coal in the ground in its original state and before being brought to the surface can scarcely be called a product.

[3] This brings the court to the consideration of the fourth and final charge of the bill in the outline adopted by the court, that the property of plaintiff is assessed in excess of its real value while other property of the state is assessed at a rate of not exceeding seventy per cent. of its value, which in effect comes more nearly bringing the bill within the rule laid down in Taylor v. Louisville than any other feature of the bill. But the bill must be found sufficient in this particular as to the allegation of facts, if it be sustained as against the motion to dismiss. In order to analyze this particular portion of the bill, it becomes necessary to examine it as to the basis upon which that allegation rests, which charges that the property of plaintiff has been assessed for more than its real value.

This brings us again to the point, before discussed, that the alleged overvaluation for assessment purposes is on account of the inclusion of the expense of bringing the coal to the mouth of the mine, which theory of the plaintiff has heretofore been rejected by the court. There is, therefore, found no allegation in the bill which could be interpreted to charge, with this element omitted, what the proportionate assessed valuation of mine products are with relation to the assessed valuation of other classes of property, or that there is any disproportion. In other words, the allegation of overvaluation of mine products is built upon a false theory, so far as the decision of this court is concerned, which appears upon the face of the bill, and therefore is not sufficient, taken in connection with the allegation that other classes of property are assessed at not exceeding 70 per cent. of their real value, to state in this phase of the case a sufficient ground to invoke the equitable jurisdiction of this court to restrain the collection of the tax.

Other discrepancies in the bill have been referred to by counsel for the defendant, in that in one portion of the bill it is alleged that the erroneous assessment valuation exceeded the real value of the product by $1.50 per ton, and in another portion that the alleged erroneous assessment valuation exceeded the real value of the product by $1.80 per ton. This is apparently an inconsistency, which makes it more difficult to ascertain what the real contention of the plaintiff may be.

Counsel for the defendant have also called attention to the allegation of the bill with respect to the amount paid of the tax complained of, which allegation is that the tax was paid upon a valuation of $2.20 per ton. This is likewise inconsistent with the allegations of the bill in other places, as before stated, that the assessed valuation exceeded the real value by $1.50 per ton, which would make the real value $1.50, and in another place that it exceeded the real value by $1.80 per ton, which would make the real value $1.20. By the Wyoming Compiled Statutes 1920 (section 6305) it is provided that the plaintiff in an action to enjoin the collection of taxes, if he admit a part thereof to have been

legally levied, he must pay or tender the sum admitted to be due. This apparently the plaintiff has not done, if its allegations in regard to the real value of the property are to be considered, but by its payment has admitted as legal a portion of the tax now challenged as illegal.

The bill also fails to disclose that the acts complained of by the assessment and taxation officers of the state apply generally to other property of the same class within the state, or property of the plaintiff in several different counties, which two elements were particularly cited in the Taylor Case to sustain the jurisdiction of the federal court. The plaintiff's bill also lacks any allegation of a uniform and systematic method of the board in fixing the alleged illegal assessment valuations, which was found in the Taylor Case to be a matter of fact. So far as the bill shows, the act complained of is an isolated transaction.

For the reasons stated, the motion to dismiss will be granted, reserving to the plaintiff its proper exceptions.