**UNITED STATES of America,**
**Appellee,**

v.

**Victor E. STADTER, Marvin Wright and Roy Ehlen, Defendants-Appellants.**

**No. 415, Docket 28568.**

United States Court of Appeals Second Circuit.

Argued April 10, 1964.

Decided Aug. 11, 1964.

25. 337 U.S. at 515–16, 69 S.Ct. 1251.

Abner P. Slatt, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, Edward N. Costikyan, Reka P. Hoff, Maurice deG. Ford and Anthony F. Marra, New York City, The Legal Aid Society, of counsel), for defendants-appellants.

Joseph P. Hoey, U. S. Atty., for Eastern Dist. of New York (Jerome C. Ditore, Asst. U. S. Atty., and George L. Barnett, Atty., Dept. of Justice, of counsel), for the United States.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge.

Victor E. Stadter, Marvin Wright and Roy Ehlen appeal from judgments of conviction entered after a jury verdict in the United States District Court for the Eastern District of New York. Appellants were convicted of unlawfully selling heroin and of conspiring to do so, in violation of 21 U.S.C.A. § 174, 18 U.S.C.A. § 2 (two counts), 26 U.S.C.A. § 4704(a), 18 U.S.C.A. § 2 (two counts), and 21 U.S.C.A. § 174 (one count). The indictment also named as co-defendants under each count James Joseph and Richard Gardiner, but their trial was severed. They testified at some length for the Government. Since appellants do not challenge the sufficiency of the evidence, a brief résumé of the facts which the jury was entitled to find will suffice.

Defendant Gardiner met appellants Stadter, Wright and Ehlen in Belize, British Honduras, and in the Fall of 1961, he and Stadter discussed the possibilities of marketing marijuana in New York City. In January 1962 Gardiner travelled to New York to make arrangements with defendant Joseph who agreed to assist in the sales. Gardiner told Stadter of Joseph's enlistment and of the other arrangements upon his return to Belize. Near the end of February 1962, according to Gardiner, Stadter said that he knew where he could get some heroin and that he would use the proceeds of the marijuana sales to finance purchases of heroin. Shortly thereafter, Gardiner left for New York where he rejoined Joseph.

During March, April and May, 1962, Gardiner and Joseph were notified by telephone of when to expect shipments of marijuana from Stadter and Wright. These shipments, six in all, were made in suit cases or foot lockers to Gardiner and Joseph under assumed names. Gardiner and Joseph sold the marijuana and delivered on several occasions a total of nearly $30,000 in proceeds to Wright and Stadter in Manhattan. Wright was identified as the sender of one of the packages received by Gardiner, while Ehlen's handwriting appeared on airline delivery sheets for similar shipments.

On May 22, 1962, Gardiner was summoned to Miami by Stadter, where he,

Stadter and Wright met at Wright's home. Stadter said that he had acquired three kilos of heroin, which he had purchased on credit, and asked if Gardiner thought that he and Joseph could sell it in New York. Gardiner, accompanied by Ehlen, immediately returned to New York to gain Joseph's approval. Initially, Joseph was reluctant to agree but did permit Gardiner to use his address, 22 Hart Street, earlier utilized for marijuana shipments, and suggested a fictitious name to which the first heroin shipment could be sent. Gardiner gave the name and address to Ehlen and also delivered the remaining proceeds from the marijuana sales. On or about May 27th, Wright placed a call from Miami to Gardiner in New York. Gardiner said that he had as yet not received a package, and Wright replied that "We was at the border. You will be hearing from us in a day or two." By May 31st Gardiner and Joseph were in receipt of a package mailed to 22 Hart Street, which contained 17 one-ounce bags of heroin. Another package containing heroin arrived on June 4th.

Evidently Joseph's reluctance to deal in heroin was overcome because he was soon actively engaged with Gardiner in locating a buyer who would be able to purchase heroin in substantial amounts. Joseph's efforts led to his meeting, on June 7, 1962, with a federal agent who was operating undercover. The next day the agent purchased from Joseph one kilo of heroin for $18,000. A delivery of another kilo and one-half was made by Joseph to the agent during the night of June 13–14, 1962. This shipment had just been brought from Philadelphia by Ehlen who was met in New York by Stadter, Wright and Gardiner. All were arrested that night.

Stadter and Ehlen, but not Wright, took the stand in their defense. They admitted that they knew Gardiner and Wright and had met with them on many of the occasions described on the Government's direct case. However, they denied any dealings in marijuana or heroin and asserted that their frequent meetings with Gardiner were of an innocent business or social nature.

On this appeal, appellants raise three principal points: (1) that the trial court erred in admitting evidence of the marijuana transactions since these dealings were not alleged in the indictment; (2) that it erred in instructing the jury that hearsay statements of co-conspirators could be considered if, after hearing all the evidence, the jury believed that the defendant was a conspirator; and (3) that the court erred in instructing the jury that 21 U.S.C.A. § 174 allows a conviction upon proof of possession of a narcotic drug without a preliminary determination of illegal importation. We find no merit in any of these contentions and, accordingly, affirm the convictions.

Proof that appellants had engaged in a thriving marijuana business prior to the sales of heroin alleged in the indictment was quite properly allowed to be presented to the jury with appropriate limiting instructions.[1] The evi-

---

1. In addition to the instructions delivered in the course of the trial, the trial court said in its charge:

"You must, however, bear clearly and steadfastly in mind that the defendants are not on trial for a marihuana offense. There is no marihuana count or charge in the indictment. Even if you become utterly convinced that the defendants did deal in marihuana, and conspired to do so, if you also conclude that the Government has not proved the essential elements of one or more of the five heroin counts beyond a reasonable doubt, you must acquit all three of the defendants on trial on all counts. You may not convict the defendants on this indictment or any count of it if you become convinced that they committed a marihuana offense and only a marihuana offense. All the evidence on the marihuana matters is relevant and was admitted only so far as it relates to the charge that the combination to deal in marihuana was a planned step on the way to dealing in heroin and only so far as it relates to the charge that the earlier dealings in marihuana established on a working basis the respective part that

dence is convincing that transactions in marijuana were integral parts of one broad conspiracy which culminated in the two sales of heroin charged in the indictment. The jury was entitled to find that marijuana sales were to provide the wherewithal with which Stadter and his compatriots could get on with the more lucrative traffic in heroin. Thus, on the conspiracy count, this case does not present the situation posed where evidence of prior, unrelated criminal acts is introduced to show a general "predisposition" to crime. See Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948); United States v. Beno, 324 F.2d 582, 587 (2d Cir. 1963); Railton v. United States, 127 F.2d 691 (5th Cir. 1942). The marijuana transactions were but one aspect of the heroin conspiracy for which appellants were convicted. Of course, the plan or agreement as expressed by Stadter to Gardiner was the important element and the fact that there was a deviation and the heroin was eventually procured on credit is immaterial. Criminal arrangements need not run courses of unerring precision. Moreover evidence of the marijuana dealings was relevant, even without the financial relationship, because it showed the organization and structure of the conspiracy as well as the individual role played by each conspirator whether the commodity was marijuana or heroin. In addition, the marijuana transactions had a bearing on the intent of the parties to commit the substantive crime of selling heroin. "[E]vidence relevant to the proof of one crime is not incompetent because it discloses the commission of another." United States v. Eury, 268 F.2d 517, 520 (2d Cir. 1959); see United States v. Barrett, 280 F. 889 (2d Cir.

1960); United States v. Brott, 264 F.2d 433, 434 (2d Cir.), cert. denied, 359 U.S. 985, 79 S.Ct. 941, 3 L.Ed.2d 933 (1959); United States v. Dornblut, 261 F.2d 949, 951 (2d Cir. 1958), cert. denied, 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959); United States v. Glory Blouse & Sportswear Co., 158 F.2d 880, 881 (2d Cir. 1947).

It is settled that there must be independent evidence establishing a defendant's participation in a conspiracy if declarations of a co-conspirator made pursuant to and in furtherance of the conspiracy are to be used against that defendant. See e. g., Glasser v. United States, 315 U.S. 60, 74–75, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Bentvena, 319 F.2d 916, 948–949 (2d Cir.), cert. denied Ormento v. United States, Di Pietro v. United States, Fernandez v. United States, Panico v. United States, Galante v. United States, Loicano v. United States, Mancino v. United States, Sciremammano v. United States, Mirra v. United States, 375 U.S. 940, 84 S.Ct. 345, 346, 353, 355, 360, 11 L.Ed.2d 271, 272 (1963), rehearing denied, Fernandez v. United States, 375 U.S. 989, 84 S.Ct. 515, 11 L.Ed.2d 476; United States v. Consolidated Laundries Corp., 291 F.2d 563, 576 (2d Cir. 1961). But there is no requirement, as appellants have contended, that the jury must first find from the independent evidence that a conspiracy existed and that the defendants were members of it before considering the hearsay. Indeed, to so hold would have the practical result of destroying this well established exception to the hearsay rule. The identical argument has been rejected in United States v. Dennis, 183 F.2d 201, 231 (2d Cir. 1950), aff'd on other grounds, 341 U.S.

each defendant would play in the transactions of June 8 and June 13–14."
And, later on in the charge:
"Again, you must keep in mind, particularly as to Count 5, that a finding of a conspiracy to deal only in marihuana and the carrying out of a conspiracy limited to marihuana is not a ground for finding any defendant here guilty on any count. Unless you find

that there was a marihuana conspiracy that contemplated ultimate distribution of heroin bought with marihuana proceeds, the marihuana evidence, if you accept it, and as I have said, contributes only to show that the defendants had established combinational arrangements with one another and had established modes of participation by each defendant in a course of conduct."

**330**

494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), where this court observed:

"[T]he better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends, and that, if he decides it to be competent, he is to leave it to the jury to use like any other evidence, without instructing them to consider it as proof only after they too have decided a preliminary issue which alone makes it competent."

See also Carbo v. United States, 314 F.2d 718, 736–737 (9th Cir. 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964); United States v. Stromberg, 268 F.2d 256, 265–266 (2d Cir.), cert. denied, 361 U.S. 863, 80 S. Ct. 123, 4 L.Ed.2d 102 (1959); United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945). Implicit in the instructions of which appellants complain[2] is the trial court's determination that there was sufficient independent evidence of the conspiracy. By the same token, the trial court's charge to the jury, in effect saying that it had to determine by independent proof that a defendant was a conspirator before considering hearsay statements of co-conspirators, was unduly generous to appellants. Compare the charge in United States v. Stromberg, supra, 268 F.2d at 265, n. 10.

In United States v. Devenere, 332 F.2d 160 (2d Cir. 1964), this court again rejected the attack on the validity of the statutory presumption found in 21 U.S.C.A. § 174. "It is too late in the day to question the validity of the inference of illegal importation of heroin and knowledge thereof from the fact of possession. * * * The statute provides that possession 'shall be deemed sufficient evidence to authorize conviction' unless explained. United States v. Gibson, 310 F.2d 79 (2 Cir. 1962);

United States v. Savage, 292 F.2d 264 (2 Cir. 1961) and cases cited therein." Other cases are collected in 50 Va.L.Rev. 183 (1964).

Abner P. Slatt, Esq., with Edward N. Costikyan, Reka P. Hoff and Maurice deG. Ford, of counsel, has argued ably as court appointed attorney with commendable imagination and vigor. For these services, the court expresses its appreciation.

---

2. "So you must listen to this with a very sharp ear because this will not be something that you can use to help you decide this case, unless ultimately you find from this and from all the other evidence

in the case that the Government has established to your satisfaction that there really was a conspiracy of the kind charged in the indictment."