UNITED STATES of America,
Appellee,

v.

William RAGLAND, Appellant.

No. 191, Docket 30661.

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1965.

Decided March 14, 1967.

Jon O. Newman, U. S. Atty., for the District of Connecticut, Hartford, Conn., for appellee.

Peter B. Sullivan, Hartford, Conn., for appellant.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

After a jury trial appellant was convicted in the United States District Court for the District of Connecticut for aiding and abetting a narcotics transaction prohibited by 26 U.S.C. § 4705(a) and for conspiring to effectuate such a transaction in violation of 18 U.S.C. § 371.

On January 10, 1966, Agent Wayne Valentine of the Bureau of Narcotics was riding along Barbour Street in Hartford, Connecticut, in a car being driven by Joseph Allevo, an informant of the Bureau. Clyde Wilson, who was subsequently jointly indicted with appellant,[1] was standing on Barbour Street next to a parked Chevrolet in which appellant was seated in the driver's seat. As Valentine and Allevo approached, Wilson signalled to them to stop and then he crossed the street to where they were. Upon being introduced by Allevo to Valentine, Wilson offered to sell Valentine three "treys" (packages of narcotics worth $3.00 at New York City prices)

---

1. On April 7, 1966, just prior to the drawing of the jury in the case, Wilson changed his plea to guilty and at Ragland's trial did not testify for or against Ragland.

for $27.00, took that amount of cash from Valentine, and returned to and entered the Chevrolet. Appellant then pulled the Chevrolet alongside Valentine's car, and Wilson told Valentine, in appellant's presence, that "the man" could only sell him "nickel" packages ($5.00 packages at New York City prices). Valentine requested two "nickels" and followed the Chevrolet, with appellant at the wheel, to an apartment building, later shown to be Wilson's residence, and upon arrival there Wilson walked back to Valentine's car, told him the price of "nickels" would be $11 each and returned $5.00 to Valentine to reflect the adjustment. Wilson and appellant then entered the building together and a moment later Wilson returned alone with the narcotics for Valentine.

That evening Valentine and Allevo passed appellant's parked Chevrolet in which appellant was sitting. Wilson, who was standing at the curb, asked them to park around the corner to await the results of his discussion with his "man" about arrangements to go to New York City. A few minutes later appellant's car pulled alongside Valentine's and a second conversation between Wilson and Valentine took place in appellant's presence. Valentine specifically asked Wilson if he had "narcotics" with him. Wilson replied in the negative but added that "Bill" was going to New York City and would return the next day with a full supply. During this conversation the term "narcotics" was expressly mentioned several times within appellant's hearing.

The next day Wilson confirmed to Valentine that his "man" would return from "the city" that evening and that Valentine would have to wait for him to arrive if he wanted more "stuff."

Nine days later, on January 20, Wilson, riding with appellant in appellant's Chevrolet, signalled Valentine and Allevo to pull over to the curb with their car, and the Chevrolet parked behind Valentine. Wilson got out of the Chevrolet and offered to sell Valentine two "treys" for $14.00. Valentine agreed to the price

and then Wilson returned to appellant's car. Both cars, with appellant's car in the lead, proceeded for some distance and stopped. Wilson got out of the Chevrolet, walked back to Valentine's car, received the money from Valentine and handed it to appellant. Appellant then walked away from Wilson and Valentine and returned a few minutes later with two glassine envelopes which he gave to Wilson. Wilson delivered the envelopes containing a white powdery substance, later shown to be non-narcotic, to Valentine.

Later that evening, Valentine spotted Wilson and appellant and told Wilson that the "stuff" given them was "turkey" or no good. After tasting the powder, Wilson shouted back toward appellant, "Bill, what did you give these guys?" Appellant made no reply. Wilson then told Valentine he would straighten everything out, and appellant and Wilson left together.

The above narrative sets forth the uncontradicted testimony of Agent Valentine at appellant's trial. Another Bureau of Narcotics agent and a Hartford police officer attested to their surveillance of these meetings and corroborated the incidents that Valentine related. Allevo, the informer, died prior to trial. The defense produced no witnesses.

On this appeal, appellant contends that: (1) he was denied his Sixth Amendment right to a trial by an impartial tribunal because jurors who were on the jury that convicted him had previously sat on juries in other narcotics prosecutions involving defendants who had been indicted at the same time as appellant, and these jurors had heard the same chief government witness, Agent Valentine, testify at those trials; (2) the trial court erred in admitting into evidence certain testimony of Valentine recounting statements made by Wilson, appellant's alleged co-conspirator, spoken outside of appellant's presence, because when the statements were admitted into evidence the Government had not yet established, prima facie, the concert of action between the declarant

and appellant prerequisite to the hearsay exception that permits the introduction of such statements; and (3) the trial court erred in instructing the jury to consider such statements only if they otherwise found a prima facie case to have been established against appellant. As we point out hereafter, none of these claims require a reversal of appellant's conviction.

## I. *The Impartial Tribunal*

On this appeal appellant urges for the first time that he was prejudiced by the presence on the convicting panel of seven jurors who had sat on one prior narcotics trial and two others who previously had heard two cases in which the chief government witness, Agent Valentine, had testified, and in which the Government had obtained convictions.

The jury was drawn and impaneled on Thursday, April 7th. Voir dire questions to the jury panel were propounded by the trial court. Counsel for appellant was invited by the court to ask additional questions but declined to do so. He exercised only one of the ten peremptory challenges allowed to appellant. He made no challenges for cause and did not challenge the array.

It does not appear whether appellant's counsel was aware of the prior jury service of these nine jurors when the jury was selected on April 7, but from the situation as it is pictured to us on appeal it is certain that both appellant and his counsel should have been aware of it prior to April 12, the day on which the trial itself began. Nevertheless, though having had five days in which to acquaint themselves with the previous jury activities of these jurors chosen on April 7, neither appellant nor appellant's counsel on April 12 made any objection to the composition of the jury at that time. They did not attempt to challenge the jury or any of the individual jurors and there was no motion made for a mistrial. So far as appears, the trial court during the course of the trial was never informed of any claim that the jury might not be an impartial one.

Failure to object to the composition of the jury has long been held to result in a waiver of the right of the accused to be heard by an impartial jury. United States ex rel. Marshall v. Snyder, 160 F.2d 351, 353 (2 Cir. 1947); Graham v. United States, 257 F.2d 724, 729 (6 Cir. 1958); Harbold v. United States, 255 F.2d 202, 205 (10 Cir. 1958); Fabian v. United States, 358 F.2d 187, 191 (8 Cir. 1966).

As the burden of proving prejudice rests with the challenger, Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), quoting from Reynolds v. United States, 98 U.S. 145, 157, 25 L.Ed. 244 (1878), Beck v. Washington, 369 U.S. 541, 558, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962), the purpose of requiring that the fitness of a juror be challenged at the inception of trial is to permit an inquiry into his impartiality at a time when he can be replaced if shown to be biased. Were the rule otherwise, a defendant could, as appellant seeks to do herein, fail timely to exercise his challenges and, after verdict, claim prejudice on appeal if the verdict displeases him. In the instant case, for example, all nine jurors appellant now suggests may well have been partial could have been removed from the panel by the exercise of the nine unused peremptory challenges. To give an accused a second trial each time he doubts, after an unfavorable verdict, the objectivity of jurors, would seriously impede the processes of justice.

In view of our conclusion that appellant waived his right to challenge the jury by failing to make proper objections at trial, we need not decide, and we are not required to express an opinion, as to whether, if the point had been preserved by proper objection below, the previous participation of jurors in similar cases involving identical witnesses, but dealing with different transactions and different defendants, would bar the

jurors from sitting on a subsequent case.[2]

■ Appellant's claim of partiality due to excessive publicity must also fail. Unlike Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), and Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), the present record is barren of any indication that the jurors were ever exposed to such an improper influence, much less that any of them were prejudiced by an exposure. See Finnegan v. United States, 204 F.2d 105, 110 (8 Cir.), cert. denied, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953). Moreover, as undue influence resulting from excessive pre-trial publicity is a sufficient basis for challenging a juror for cause, Rizzo v. United States, 304 F.2d 810, 816 (8 Cir.), cert. denied sub nom. Nafie v. United States, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962), appellant's failure to question prospective jurors on their voir dire as to this and to challenge for cause disposed of this claim at that time.

## II. *Admissibility of Hearsay Declarations*

■ Appellant next contends that the evidence implicating appellant, independent of Valentine's recounting of Wilson's extra-judicial declarations, was insufficient to establish prima facie the concerted action between appellant and Wilson necessary to authorize the admission against appellant of Wilson's statements spoken in appellant's absence. It is clear that such statements are inadmissible when no independent evidence links the declarant to the defendant, Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and equally clear that once some conspiracy, agency, or concert of action is independently shown, Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), United States v. Accardi, 342 F.2d 697 (2 Cir.), cert. denied, 382 U.S. 954, 86 S.Ct. 426, 15 L.Ed.2d 359 (1965), hearsay statements made in furtherance of such relationship, United States v.

2. It can be noted, however, even if not necessary to our decision, that although there are state decisions to the contrary, see, e. g., cases cited in Casias v. United States, 315 F.2d 614, 620 (10 Cir.), cert. denied, 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963) (Murrah, C. J., dissenting), the federal courts have uniformly answered this question in the negative. A juror is not disqualified merely because he has previously heard a *similar case* arising out of a separate and distinct set of circumstances even though the offenses charged in the .cases are the same offenses, and the same witnesses testifying in the second case also testified in the earlier one. Casias v. United States, supra at 615; Harbold v. United States, supra at 205; Cwach v. United States, 212 F.2d 520, 529 (8 Cir. 1954); Belvin v. United States, 12 F.2d 548, 550 (4 Cir.), cert. denied, 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850 (1926); Wilkes v. United States, 291 F. 988, 990 (6 Cir. 1923), cert. denied, 263 U.S. 719, 44 S.Ct. 181, 68 L.Ed. 523 (1924); Haussener v. United States, 4 F.2d 884, 886 (8 Cir. 1925); cf. United States v. Cooper, 332 F.2d 790, 791 (3 Cir. 1964).

The case of Everitt v. United States, 281 F.2d 429 (5 Cir. 1960), cited by appellant, clearly is distinguishable for that decision rested both on defendant's lack of counsel, and on the fact that there *identical evidence* was presented to the juries in successive prosecutions.

The justifications offered for this position are two-fold: (1) so long as the transactions and defendants are different, the credibility of the identical witness is tested in varying contexts and against different parties, see Wilkes v. United States, supra at 990; and (2) to require either different witnesses or different jurors in a series of prosecutions bottomed on the same statute would severely jeopardize the efficacy of the law enforcement process, see Haussener v. United States, supra at 886. Nevertheless, in the most recent decision, *Casias*, the dissenting judges of the evenly divided Tenth Circuit were convinced that jurors who have previously passed on the credibility of witnesses could not avoid being influenced thereby in a subsequent proceeding where those witnesses testified and therefore the jurors should be disqualified as a matter of law. See Casias v. United States, supra at 619–621.

Krulewitch, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), are admissible. However, the independent evidence need not, as appellant suggests, be so clear and convincing as to *compel*, absent contradiction, a finding of the fact sought to be proved.

The threshold requirement for admissibility is satisfied by a showing of a likelihood of an illicit association between the declarant and the defendant although it might later eventuate that the independent evidence so admitted proves to be insufficient to justify submitting to the jury the issue of defendant's alleged guilty involvement with declarant. United States v. Borelli, 336 F.2d 376, 387 (2 Cir. 1964), cert. denied sub nom. Mogavero v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); United States v. Ross, 321 F.2d 61, 68 (2 Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963). If the issue is submitted to the jury it then becomes the function of the jury, not the trial judge, to determine whether the evidence was credible and was convincing beyond a reasonable doubt. United States v. Pugliese, 153 F.2d 497, 500 (2 Cir. 1945); Carbo v. United States, 314 F.2d 718, 737 (9 Cir. 1963), cert. denied, Palermo v. United States, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). In determining preliminary questions of fact relating to admissibility of the hearsay the trial judge has wide discretion, United States v. Von Clemm, 136 F.2d 968, 971 (2 Cir.), cert. denied, 320 U.S. 769, 64 S.Ct. 81, 88 L. Ed. 459 (1943), and need only be satisfied, if he accepts the independent evidence as credible, that that evidence is sufficient to support a finding of a joint undertaking, Carbo v. United States, supra at 737; United States v. Borelli, supra at 387, quoting from United States v. Pugliese, supra at 500.

Moreover, the independent evidence of illicit association may be totally circumstantial, Bartlett v. United States, 166 F.2d 920, 925 (10 Cir. 1948); see United States v. Garguilo, 310 F.2d 249, 253 (2 Cir. 1962), and may, as here, include evidence of acts of the accused occurring *after* the time at which the association is alleged to be in existence, United States v. Costello, 352 F.2d 848, 855 (2 Cir. 1965), cert. granted, 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 205 (1966). Nor is it necessary in this circuit that such independent evidence be inconsistent with all reasonable hypotheses of innocence, as appellant suggests, either to legitimate its admissibility, see United States v. Brill, 350 F.2d 171, 173 (2 Cir. 1965), cert. denied sub nom. Hyman v. United States, 382 U.S. 973, 86 S.Ct. 550, 15 L.Ed.2d 465 (1966), or to support a conviction, United States v. Woodner, 317 F.2d 649, 651 (2 Cir.), cert. denied, 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 144 (1963). It is true that an association with an alleged conspirator, without more, is insufficient to establish the necessary foundation for the admissibility of the incriminating statements, United States v. Stromberg, 268 F.2d 256, 267 (2 Cir.), cert. denied, Lessa v. United States, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959); United States v. Bentvena, 319 F.2d 916, 949, 955 (2 Cir.), cert. denied sub nom. Mirra v. United States, 375 U.S. 940, 84 S.Ct. 360, 11 L.Ed.2d 272 (1963); United States v. Cimino, 321 F.2d 509, 510 (2 Cir. 1963), cert. denied, 375 U.S. 974, 84 S.Ct. 491, 11 L.Ed.2d 418 (1964). The accused must "in some sort associate himself with the venture, * * * participate in it as in something that he wishes to bring about * * * [or] seek by his action to make it succeed." United States v. Peoni, 100 F.2d 401, 402 (2 Cir. 1938). Such association may be shown by possession and transportation of the subject matter of an illicit transaction plus participation in the proceeds thereof, e. g., Mack v. United States, 326 F.2d 481 (8 Cir.), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964), as by the defendant's driving the car in which negotiations took place and the transaction was consummated, Simon v. United States, 78 F.2d 454, 455–456 (6 Cir. 1935); cf. Ong Way Jong v. United States, 245 F.2d 392, 395 (9 Cir. 1957), or by the defendant's driving the

car transporting the illicit subject matter under circumstances indicating a possession thereof. United States v. Garguilo, supra at 253. Mere presence at the scene of an offense when the accused is likely to be aware that an offense is to occur may be sufficient to base an inference of complicity when such presence either facilitates, Garguilo, supra at 253, or permits, e. g., United States v. Arrow Packing Corp., 153 F.2d 669, 670 (2 Cir.), cert. denied, 327 U.S. 805, 66 S.Ct. 962, 90 L.Ed. 1030 (1946) the unlawful act. An otherwise innocent act of "relatively slight moment," Garguilo, supra at 253, may, when viewed in the context of surrounding circumstances, justify an inference of complicity, see, e. g., United States v. Lev, 276 F.2d 605, 608 (2 Cir.), cert. denied, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960), and the fact that the defendant maintained a silence throughout, while often relevant to his awareness and role in the transaction, does not conclusively negate his participation in it. Mack v. United States, supra at 486.

■ The instant record lays a solid foundation for a prima facie judicial finding that appellant conspired with Wilson in the illegal sale of narcotics. Although he was never shown to have transported or to have been in possession of narcotics, appellant clearly facilitated Wilson's sales to Valentine by driving Wilson to his meetings with Valentine and driving him to the source of the narcotics sold on January 10. Any claim on appellant's part of lack of awareness of the nature of the transaction is forcefully contradicted by several undisputed facts. Although the initial conversation between Wilson and Valentine in appellant's presence was masked in the "slanguage" of narcotics dealings and was not necessarily comprehensible to the uninitiated, their second conversation in appellant's presence and within his hearing included specific references to "narcotics." Moreover, the frequent interchangeable references by Wilson to "Bill" and to "my man" created a strong

inference that appellant (whose identity as "Bill" was established when Wilson so addressed him on the evening of January 20 and indicated that "Bill" had given to Wilson the non-narcotic powder that Wilson, in turn, had delivered to Valentine) was in fact not a mere casual facilitator, but Wilson's supplier. This inference was bolstered by Wilson's modification of the price and quantity of narcotics available for sale to Valentine after Wilson had returned to appellant's car during the first January 10 meeting, and was also bolstered by all the events of January 20 when Wilson gave appellant Valentine's money and then appellant subsequently produced the glassine envelopes that Wilson delivered to Valentine as being narcotics. All the foregoing events were testified to by Valentine, were in evidence independent of Wilson's hearsay statements to Valentine, and, if accepted as credible, established beyond question that appellant did in fact "associate himself with the venture." United States v. Peoni, supra at 402. Inasmuch as such evidence was apparently credible and was never contradicted by the defense, we hold that it is adequate to comply with the requirements for the admissibility against an alleged conspirator of a coconspirator's hearsay declarations. See United States v. Borelli, 336 F.2d 376, 387 (2 Cir. 1964), cert. denied sub nom. Mogavero v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965).

### III. The Jury Instructions Concerning the Hearsay Declarations

Appellant's final claim of reversible error arises from the trial judge's instruction to the jury when he permitted the admission into evidence of Valentine's recounting of Wilson's statements made by Wilson to Valentine out of appellant's presence. The judge, without expressly finding a conspiracy to have been demonstrated, told the jury that it should only consider such testimony if it first found a prima facie case of conspiracy to have been established. These instructions were reaffirmed in his

charge when he submitted the case at the end of trial.

 In deciding whether to admit hearsay statements made by conspirators against their co-conspirators " * * we think that the better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends, and that, if he decides it to be competent, he is to leave it to the jury to use like any other evidence, without instructing them to consider it as proof only after they too have decided a preliminary issue which alone makes it competent." United States v. Dennis, 183 F.2d 201, 231 (2 Cir. 1950), aff'd on other grounds, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). The reason for the rule is there stated: "It is difficult to see what value the declarations could have as proof of the conspiracy, if before using them the jury had to be satisfied that the declarant and the accused were engaged in the conspiracy charged; for upon that hypothesis the declarations would merely serve to confirm what the jury had already decided." 183 F.2d at 230–231.

Here, the trial judge determined that there had been a sufficient showing of conspiracy when, after a discussion of the legal requirements he admitted the Valentine testimony recounting Wilson's statements, see United States v. Stadter, 336 F.2d 326, 330 (2 Cir. 1964). This decision was confirmed and became obvious when he denied appellant's motion for acquittal on this ground, see United States v. Stromberg, 268 F.2d 256, 266 (2 Cir.), cert. denied, Lessa v. United States, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959).

Under the rule announced in United States v. Dennis, supra, the learned trial judge after thus determining the admissibility of the statements by the challenged instruction unnecessarily gave the jury an opportunity to second-guess his decision. United States v. Nuccio, 373 F.2d 168 (2 Cir. 1967); Carbo v. United States, 314 F.2d 718, 736–737 (9 Cir. 1963), cert. denied, Palermo v.

United States, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). The instruction and the charge were both unduly generous to appellant. United States v. Stadter, supra at 330. An error of this sort, so favoring a defendant, provides no basis for a reversal of a judgment of conviction entered upon the jury verdict. United States v. Stromberg, supra at 266.

Judgment of conviction affirmed.