UNITED STATES of America, Appellee,

v.

Santos DeJESUS and Louis Rupert Garcia, Defendants-Appellants.

Nos. 59, 60, Dockets 86–1179, 86–1193.

United States Court of Appeals, Second Circuit.

Argued Sept. 9, 1986.
Decided Nov. 19, 1986.

See also, D.C., 630 F.Supp. 142.

Michael M. Maloney, New York City, for defendant-appellant Garcia.

Noah Lipman, New York City (David Segal, Richard Wojszwilo, New York City, of counsel), for defendant-appellant DeJesus.

Robert Garcia, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., Bruce A. Green, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee.

Before LUMBARD, KEARSE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Louis Rupert Garcia, a/k/a "Papo," and Santos DeJesus appeal from their convictions before Judge Lowe.

After a bench trial on stipulated facts, DeJesus was convicted of conspiracy to distribute heroin, in violation of 21 U.S.C. § 846 (1982); two counts of possession of 2,121 grams and approximately 355 grams of heroin with intent to distribute, in violation of 21 U.S.C. §§ 812 and 841 (1982); and possession of approximately 2.2 grams of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 812 and 841. DeJesus was sentenced to three years in prison on the conspiracy count. He received a suspended sentence on the remaining counts, and was placed on five years probation. DeJesus contends that the independent evidence of a conspiracy was insufficient to permit the admission against him of co-conspirator hearsay statements.

Louis Rupert Garcia, hereinafter referred to by his nickname "Papo" in order to avoid confusion with his co-conspirator Louis Soto Garcia, pleaded guilty to conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. § 846; possession of approximately 2,121 grams of heroin with intent to distribute, in violation of 21 U.S.C. §§ 812 and 841; and possession of approximately 1,505 grams of cocaine, with intent to distribute, in violation of 21 U.S.C. §§ 812 and 841. He was sentenced to three consecutive ten-year prison terms, to be followed by a five-year special parole term. On appeal, Papo challenges the imposition of cumulative sentences for the simultaneous possession of separate narcotics.

Finding no merit in either defendant's contentions, we affirm the convictions.

## BACKGROUND

The government's proof at DeJesus' trial included stipulations, narcotics, records of narcotics transactions, and taped telephone conversations intercepted on Papo's telephone pursuant to a court order. Viewed in the light most favorable to the government,[1] the evidence established the following events.

On July 30, 1984, at 3:22 p.m., one Louis Soto Garcia telephoned Papo from Puerto Rico. Garcia directed Papo, who was in New York, to take 250 grams of heroin to DeJesus later that afternoon. Garcia said that he had left DeJesus in charge in New York while he was in Puerto Rico. He instructed Papo to tell DeJesus that a man named "Nelson" would pick up the heroin the following morning and deliver it to Garcia. Papo and Garcia then discussed the quality of the heroin to be delivered that afternoon and delivery of a better-quality heroin to take place soon. The call concluded with Garcia repeating his directions to Papo to deliver the heroin that day to DeJesus, and to inform DeJesus that Nelson would pick up the heroin the next day.

About an hour and a half later, Papo telephoned DeJesus at a number listed in the name of Garcia's wife. Papo asked DeJesus if he had spoken with Garcia. When DeJesus replied that he had spoken to Garcia a little while ago, Papo stated that Garcia was waiting for something that Papo would deliver to DeJesus. Papo said that he would see DeJesus in about an

hour, and DeJesus replied that he would be waiting.

On August 3, 1984, Garcia again called Papo from Puerto Rico. Garcia said that he had received the heroin and that it had "worked perfectly." Garcia and Papo then negotiated another delivery in which DeJesus would serve as a middleman. Garcia instructed Papo to see DeJesus the following day at about 1:00 p.m. so that Papo and DeJesus could make arrangements for delivery to Garcia. Garcia then gave DeJesus' home telephone number to Papo.

The next day, August 4, 1984, Papo called Garcia in Puerto Rico at approximately 4:30 p.m. Papo indicated that he had seen DeJesus and had given him a half kilogram of heroin.

On September 6, 1984, DEA agents arrested DeJesus and executed a search warrant at his home in Woodside, New York. The agents found various amounts of cocaine, a cutting agent containing heroin, and a sifter. Cash and jewelry were also seized.

Also on September 6, DEA agents, acting pursuant to search warrants, seized a virtual mountain of evidence of a narcotics conspiracy at Papo's two apartments in New York City public housing projects.[2] Narcotics records were also seized. These included a detailed log in Papo's handwriting that identified the customers to whom narcotics were sold, the type of drugs sold (heroin or cocaine), the price and quantity, the date, and the customers' running balances. The log contained entries corresponding to the sales to Garcia that were

---

1. The government introduced expert testimony that interpreted various coded portions of these conversations. Our description of the phone calls will use the "decoded" version.

2. Evidence seized inside one apartment included $1.2 million in cash, over two kilograms of heroin, over one and a half kilograms of cocaine, a Smith and Wesson .38 caliber revolver, a Beretta .25 caliber automatic pistol, two .22 caliber rifles, a bulletproof vest, several boxes of ammunition, narcotics books and records, large amounts of cutting agents, extensive narcotics paraphernalia, and almost $78,000 in men's and

women's jewelry. The heroin included 504 grams of 94.8% pure heroin and 501 grams of 87.7% pure heroin; the cocaine included 496 grams of 97.8% pure cocaine. At Papo's other apartment, agents seized one kilogram of heroin, 379 grams of 80.5% pure methamphetamine, 1,336 dosage units of diazepam (the generic form of Valium), ten handguns and a silencer, boxes of ammunition, ten different heroin brand name rubber stamps, large amounts of cutting agents, and other narcotics paraphernalia and records.

34

negotiated in the taped telephone conversations described above.

A nine-count indictment was filed against Papo, DeJesus, and twelve other defendants on January 8, 1986. At DeJesus' separate one-day bench trial on February 26, 1986, the government sought to demonstrate that DeJesus was a member of the massive heroin trafficking conspiracy headed by Papo. Much of the evidence against DeJesus consisted of statements about his role in the taped telephone conversations between Papo and Garcia. The trial judge convicted and sentenced DeJesus as described above. Papo pleaded guilty to three counts and received consecutive sentences on each count.

## DISCUSSION

DeJesus claims that there was insufficient evidence of his participation in the conspiracy independent of co-conspirator hearsay statements to render those statements admissible against him under Fed.R. Evid. 801(d)(2)(E). *See United States v. Geaney,* 417 F.2d 1116 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). Papo contends that the imposition of cumulative sentences for the possession of separate packages of different narcotics at the same time is impermissible under 21 U.S.C. § 841. We reject both claims of error.

A. *Admissibility of Co-Conspirators' Hearsay Statements Against DeJesus*

■ Hearsay statements made by persons alleged to be co-conspirators are admissible against a defendant under Fed.R. Evid. 801(d)(2)(E) if the trial court finds as a preliminary fact under Rule 104(a),[3] *United States v. Enright,* 579 F.2d 980, 984 (6th Cir.1978), that the defendant was a member of the conspiracy and that the statements were in furtherance of the conspiracy. It is generally assumed that, although the trial court's inquiry under Rule 104(a) is not limited to evidence admissible at a trial and may thus include hearsay evidence, a finding that a defendant was a member of the conspiracy must be based on evidence "independent" of the co-conspirators' hearsay statements, as required by our pre-Rules decision in *Geaney.* 417 F.2d at 1120.

■ Proof of such membership under Rule 104(a) need only be by a preponderance of the evidence. *United States v. Cicale,* 691 F.2d 95, 103 (2d Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983). Indeed, the independent evidence need show only "a likelihood of an illicit association between the declarant and the defendant," *United States v. Alvarez-Porras,* 643 F.2d 54, 57 (2d Cir.), (quoting *United States v. Ragland,* 375 F.2d 471, 477 (2d Cir.1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968)), *cert. denied,* 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981), and the proof may be "totally circumstantial." *Ragland,* 375 F.2d at 477.

■ DeJesus claims that the government's independent proof established only that he knew Papo, and therefore was insufficient to support a *Geaney* finding of membership in the conspiracy. We disagree.[4]

---

**3.** Rule 104(a) provides:
   Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

**4.** In reviewing the admission of co-conspirator statements, we are not limited to the evidence relied on by the trial court, but may take into account all other independent evidence of a defendant's participation in the conspiracy. *See United States v. Lieberman,* 637 F.2d 95, 103 n. 11 (2d Cir.1980) (citing *Helvering v. Gowran,* 302 U.S. 238, 245–46, 58 S.Ct. 154, 157–58, 82 L.Ed. 234 (1937)). This rule, of course, applies with its greatest force in a case such as the present one in which the facts are stipulated. Accordingly, we need not consider Judge Lowe's ruling that the July 30 telephone conversation between Papo and DeJesus was enough in itself to warrant a *Geaney* finding.

■ The requirement that independent proof of membership in a conspiracy be provided before a co-conspirator's hearsay statements are admitted is designed to avoid the bootstrapping use of such statements to form the foundation for their own admission. No such bootstrapping is involved, however, where a co-conspirator's hearsay statement is admissible against a defendant under an exception to the hearsay rule other than the co-conspirator exception. Such statements thus may properly be considered in making a *Geaney* finding as to that defendant. *United States v. Cambindo Valencia*, 609 F.2d 603, 635 n. 24 (2d Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980).

We are faced with precisely such circumstances here. In their July 30 telephone conversation, Garcia negotiated with Papo for the purchase of heroin. He also instructed Papo to deliver the heroin to DeJesus, a direction that Papo clearly intended to carry out. Garcia's instructions to Papo and Papo's evident assent are independently admissible under Fed.R.Evid. 803(3). Under that rule, hearsay statements reflecting a declarant's intentions or future plans are admissible to prove subsequent acts. Fed.R.Evid. 803 advisory committee note. Accordingly, the July 30 Garcia-Papo conversation is admissible to prove that Papo and Garcia intended to carry out a narcotics transaction in which DeJesus would serve as a middleman. *See United States v. Cicale*, 691 F.2d at 104 (holding co-conspirator's hearsay statements independently admissible under Fed.R.Evid. 803(3) to show declarant's intent to engage in illicit drug transaction).

The July 30 conversation also is arguably admissible to prove DeJesus' conduct, *see United States v. Cicale*, 691 F.2d at 103–04 (noting the debate on this issue). As in *Cicale*, however, we need not decide this question. Here, DeJesus' involvement as a middleman in the delivery discussed in the July 30 conversation between Papo and Garcia was independently proven.

During the subsequent July 30 telephone conversation between DeJesus and Papo, DeJesus acknowledged that he had spoken recently to Garcia, and that he was waiting to meet Papo, who was bringing something for Garcia. This conversation established that DeJesus had undertaken to serve as a middleman as had been contemplated by Papo and Garcia. DeJesus' statements were of course admissible as admissions against DeJesus under Fed.R.Evid. 801(d)(2)(A), and Papo's statements were admissible both as adopted admissions under Fed.R.Evid. 801(d)(2)(B) and to provide context for DeJesus' statements. *See, e.g., United States v. Alvarez-Porras*, 643 F.2d at 57–58.

While DeJesus' conversation with Papo proves his participation in the transaction, the Garcia-Papo conversation proves the illicit nature of that transaction. The various co-conspirator statements were thus properly admitted against DeJesus.

### B. *Imposition of Cumulative Sentences on Papo*

■ Papo was convicted on, *inter alia*, separate counts of possessing heroin and possessing cocaine. On appeal, Papo challenges the imposition of consecutive sentences on these counts, arguing that Congress did not intend to authorize cumulative penalties under a single subsection, 21 U.S.C. § 841(a), for the simultaneous possession of different drugs.

In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. *See also, e.g., Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (conspiracy to import marijuana and conspiracy to distribute marijuana); *United States v. Langella*, 776 F.2d 1078, 1081–83 (2d Cir.1985) (perjury

before grand jury and obstruction of justice), *cert. denied,* —— U.S. ——, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986); *United States v. Marrale,* 695 F.2d 658, 662–65 (2d Cir. 1982) (theft from a foreign shipment in possession of a bank and bank larceny), *cert. denied,* 460 U.S. 1041, 103 S.Ct. 1434, 1435, 75 L.Ed.2d 793 (1983).

Papo claims that the *Blockburger* test is inapplicable to the instant case because a single statutory subsection, 21 U.S.C. § 841(a)(1), applies to both possession of heroin and possession of cocaine. Instead, he directs our attention to the decision in *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), in which the Supreme Court held that where a single federal statute is involved, any ambiguity in congressional intent regarding imposition of multiple punishments for a single transaction must be resolved in the defendant's favor. Invoking *Bell*'s "rule of lenity," Papo maintains that Section 841(a)(1) is ambiguous as to the allowable punishment for simultaneous possession of different drugs, and that this ambiguity must be resolved in his favor.

We decline to accept this analysis for several reasons. First, we held more than fifty years ago that cumulative sentences may be imposed for simultaneous possession of different drugs. *United States v. Busch,* 64 F.2d 27 (2d Cir.) (per curiam), *cert. denied,* 290 U.S. 627, 54 S.Ct. 65, 78 L.Ed. 546 (1933). In upholding consecutive sentences for concealing heroin and concealing cocaine, *Busch* reasoned that "evidence sustaining the first count would not have proved the second, and vice versa; ... when the drugs are different, evidence sustaining one count can surely not be regarded as sustaining the other." *Id.* at 28 (citing *Blockburger* ). While the narcotics laws in question have evolved through amendments to their present codification in

Section 401 of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 841, Congress has left the rule of *Busch* undisturbed.

Second, under the statutory framework applicable to Papo,[5] his sentences were not governed by a single subsection. Section 841(a) makes it illegal to possess "a controlled substance." Section 841(b)(1)(A) specifies the maximum sentence to be imposed "[i]n the case of a controlled substance in Schedule I or II which is a narcotic drug." Section 812(c) lists the proscribed narcotics separately in various schedules and subsections. Heroin is listed in Schedule I(b)(10), and cocaine is listed in Schedule II(a)(4). Subsections 841(a), (b)(1)(A), which incorporate by reference the list of controlled substances in Section 812, are the equivalent of an enumeration in separate subsections of each substance listed in Section 812. *Cf. United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977) (holding that simultaneous possession of heroin, a Schedule I controlled substance, and methadone, a Schedule II substance, are separate offenses under 21 U.S.C. § 841(a)(1)).

Finally, the congressional intent to impose separate punishments under Section 841(a)(1) for different drugs is not in doubt. One stated legislative purpose in setting criminal penalties for drug offenses in the Comprehensive Drug Abuse Prevention and Control Act was to "give maximum flexibility to judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case." H.R.Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4566, 4576. In concluding that this statement of purpose calls for a broad reading of the statutory provisions governing offenses and penalties under 21 U.S.C. § 841, we agree with the Fifth Circuit that

---

**5.** The penalty provisions of Section 841(b) and other sections of Title 21 were amended as of October 12, 1984. *See* Controlled Substances Penalties Amendment Act of 1984, Pub.L. No. 98–473, Title II, §§ 502, 503(b)(1), (2), 98 Stat.

2068, 2070, *codified at* 21 U.S.C. § 841(b). The indictment in this case charged offenses only under the earlier statute, and therefore that statute applies.

[f]ar from providing judges with flexibility in sentencing, reading the statutory words "a controlled substance" as meaning "all controlled substances possessed simultaneously" would greatly restrict judges in their sentencing capacity. In a case involving simultaneous possession of a large number of different drugs, the trial judge would be limited in sentencing to the punishment set by statute for possession of only one drug. This would hardly allow the judge to tailor the penalty to fit the seriousness of the offense. *United States v. Davis*, 656 F.2d 153, 159 (5th Cir.1981), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). In light of this congressional purpose, Papo's arguments based on *Bell*'s "rule of lenity" are unavailing.[6]

Papo also claims that multiple convictions under Section 841 violate double jeopardy principles. This argument is clearly without merit. Where Congress intended to permit multiple punishments for the same act, imposition of such punishments is constitutional. *Albernaz v. United States*, 450 U.S. at 344, 101 S.Ct. at 1145; *United States v. Walsh*, 700 F.2d 846, 856 (2d Cir.), *cert. denied*, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983).

Affirmed.

---

**6.** In *Davis*, the Fifth Circuit reviewed the imposition of cumulative sentences under 21 U.S.C. § 841 for the simultaneous possession of marijuana and Quaaludes. The court declined to apply the *Blockburger* test on the ground that the prosecution involved two offenses under a single statutory section. 656 F.2d at 156. The *Davis* court nevertheless upheld the sentences, concluding that because congressional intent to permit consecutive sentences for simultaneous possession of different drugs under Section 841 was unambiguous, the "rule of lenity" in *Bell* did not apply. *Id.* at 157–59. Our prior decision in *Busch* applying the *Blockburger* test leads, of course, to the same result.