**UNITED STATES of America**

v.

**Stevenson Stone BEY, Frederick Howard, Stevenson Stone Bey, Appellant.**

**No. 18740.**

United States Court of Appeals, Third Circuit.

Argued Nov. 20, 1970.

Decided Jan. 27, 1971.

H. David Rothman, Matson & Rothman, Pittsburgh, Pa., for appellant.

Charles F. Scarlata, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Douglas D. McBroom, Asst. U. S. Atty., Pittsburgh, Pa., on the brief) for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Appellant, Stevenson Stone Bey, was found guilty, upon jury's verdict, of all five counts of an indictment charging him with selling heroin and cocaine in violation of 26 U.S.C. § 4704(a) (two counts), and 26 U.S.C. § 4705(a) (two counts) and conspiracy in violation of 26 U.S.C. § 7237(a) and (b).

On the afternoon of June 27, 1968, Glennon Cooper, an undercover agent with the Bureau of Narcotics and an undisclosed informant entered the Hillside House Bar in Pittsburgh, Pennsylvania, to await the arrival of appellant Bey. They had been advised by Bey's mother earlier in the day that he would meet them there. Appellant arrived at 12:10 A.M. on June 28. The informant engaged him in conversation and introduced him to agent Cooper. After a brief conversation between Bey and Cooper, the informant stated, in Bey's presence, that "Stoney wants to sell us a bundle of heroin plus some cocaine for $140", a bundle of heroin being 20 glassine envelopes containing the drug. Cooper asked Bey if the package would be worth $140 to which Bey replied that Cooper could make $2 on each bag by selling it for $7. Cooper agreed to make the purchase. Bey then summoned a man who had been standing at the bar and spoke privately with him for a few minutes, after which that individual left. Bey then called the informant over to talk to him, at the same time waving Cooper away. Following a short conversation with the informant Bey left.

Approximately one half hour after Bey departed, Frank Howard, the unapprehended co-defendant, entered the bar and called the informant outside. Coop-

er went with the men. No discussion of narcotics took place, the only conversation occurring when the agent attempted to hand Howard $140. Howard refused to take it, saying that he could only take money from the informant. Cooper then gave the money to the informant, who handed it to Howard. He counted the money and said "There is only $140 here," and "Stoney told me to get $200." Upon further inquiry Howard indicated that Cooper was getting $200 worth of drugs. Cooper gave him an additional $60. Howard and the informant then walked down the street, with Cooper five to six feet behind. Howard gave the informant a package, which upon later examination was found to contain thirteen capsules of cocaine. Further down the street, Howard pointed to a basket on the corner. As Howard walked away, the informant went to the basket and retrieved a blue napkin filled with nineteen balloons containing eighteen glassine envelopes of heroin. The cocaine and heroin bore no tax stamps, nor were order forms used in the transaction.

On July 5, 1968, Cooper and the informant again met with Bey at the Hillside House Bar. At this time the conversation centered about the purchase of an ounce of heroin, which Bey indicated that he could obtain. Bey disclosed to Cooper his involvement in narcotics traffic and hinted that he was anxious to have Cooper as a steady customer. A deal was arranged whereby Cooper would pay Bey $675 for the ounce of heroin. Bey explained that one of his people would deliver it in about one half hour but that delivery would be made to the informant and not to Cooper. Cooper, however, would be able to view the entire transaction. Bey then took the money from Cooper. About twenty minutes later, appellant stormed back into the bar and threw the money into the agent's lap, shouting "those * * * feds are up the street." He then rushed out of the bar, with Cooper and the informant following. As he got into his car, Bey stated "I should kill you two guys."

Appellant first claims that the trial court erred in admitting the hearsay statement of Frank Howard, the co-defendant, in which Howard stated "Stoney told me to get $200." It is claimed that this statement did not come within the co-conspirator exception to the hearsay rule because there was no clear independent evidence of joint action or a conspiracy between the two. In a connected argument, appellant contends the statement was inadmissible and that there was no independent evidence of joint action, therefore that the government failed to prove the conspiracy count and his conviction thereon should be reversed. Bey further asserts that there is no proof of concerted action between himself and Howard and that the issue of his guilt as to the completed transaction of June 27–28 should not have been submitted to the jury, since on his theory the evidence showed that he engaged only in negotiating a sale, never delivering any narcotics.

■■■ Because all of appellant's contentions are based on the admissibility of the Howard statement, we turn to that problem. While it is true that hearsay statements are inadmissible when no independent evidence links the declarant to the defendant, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the threshold requirement for admissibility is satisfied by presenting a likelihood of an illicit association even though it may later eventuate that the independent evidence proves to be insufficient to justify submitting to the jury the question of defendant's alleged guilty involvement with declarant. United States v. Ragland, 375 F.2d 471, 477 (2 Cir. 1967), cert. denied, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968); United States v. Borelli, 336 F.2d 376, 387 (2 Cir. 1964), cert. denied sub nom. Mogavero v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); United States v. Ross, 321 F.2d 61, 68 (2 Cir. 1963), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L. Ed.2d 123 (1963). The trial judge has wide discretion and need only be satis-

fied, if he accepts the independent evidence as credible, that such evidence is sufficient to support a finding of joint undertaking. United States v. Ragland, supra.

■ The court below clearly recognized the situation presented in the trial of this conspiracy charge. Judge Sorg cautioned the prosecution that, in order for the hearsay statement to be admissible, it would be essential for the prosecution to prove some connection between Bey and Howard.

Recently in United States v. Geaney, 417 F.2d 1116 (2 Cir. 1969), the court, in discussing the particular recurring point faced by trial judges, stated:

"While the practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection,' the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances. If it has, the utterances go to the jury for them to consider along with all the other evidence in determining whether they are convinced of defendant's guilt beyond a reasonable doubt. If it has not, the judge must instruct the jury to disregard the hearsay, or when this was so large a proportion of the proof as to render a cautionary instruction of doubtful utility * * * declare a mistrial if the defendant asks for it." (417 F.2d at 1120, footnote omitted)

In this appeal at the conclusion of the government's proofs, the judge heard argument on whether there was sufficient evidence to take the conspiracy count to the jury and there was further discussion on this question after all the evidence was in. At that time the prosecu-tion was directed to comment on the proof of concerted action exclusive of the hearsay statement. It was only following a thorough review of that evidence and exploration of the matter with counsel that the trial judge satisfied himself that there was sufficient independent evidence of a conspiracy. After a similar undertaking on our part we conclude that he had reasonable grounds to so decide.

The evidence adduced disclosed that Bey negotiated a sale involving a "bundle" of heroin and some cocaine [1] for a price of $140. Bey's departure without delivery of the narcotics and the arrival of Howard, one-half hour later, strongly suggests a union between the two. The fact that Howard was delivering heroin and cocaine and the dialogue regarding the price involved strengthen this suggestion. The record definitely establishes that the informant was never out of the presence of Agent Cooper from approximately 5:30 in the afternoon until the time of delivery, and thus, the likelihood of a completely unrelated transaction between the informant and Howard was nil.

The trial court also properly considered the events of July 5, 1960, during which Bey described the method by which he carried out his operations. Evidence of subsequent conduct is admissible to show modus operandi. Parker v. United States, 400 F.2d 248 (9 Cir. 1968), cert. denied, 393 U.S. 1097, 89 S.Ct. 892, 21 L.Ed.2d 789 (1969); United States v. Laurelli, 293 F.2d 830 (3 Cir. 1961), cert. denied, 368 U.S. 961, 82 S.Ct. 406, 7 L.Ed.2d 392 (1962); United States v. Prince, 264 F.2d 850 (3 Cir. 1959); United States v. Stirone, 262 F.2d 571 (3 Cir. 1958), rev'd on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

■ Nor was it necessary for the trial court to instruct the jury to consid-

---

1. The exact amount of cocaine was never stipulated. Agent Cooper was of the opinion that he would receive 5 capsules of cocaine at $8.00 a piece, although he wasn't sure. As it turned out Cooper re-ceived 13 capsules, thus accounting for the difference between the $140 price negotiated by Bey and the $200 paid to Howard.

er the Howard statement only if it found independent evidence of the conspiracy. Once the judge has made the initial determination of admissibility, the jury should not be given an opportunity to second-guess his decision. Rather, the hearsay statement should be considered by the jury in conjunction with the other evidence in determining whether the government has proved its case beyond a reasonable doubt. United States v. Geaney, supra; United States v. Ragland, supra; United States v. Nuccio, 373 F.2d 168 (2 Cir. 1967).

With regard to the completed transaction of June 27–28, the trial court charged the jury that the main question presented was whether Bey sold or dispensed the heroin and cocaine. In this connection, the judge instructed the jury that Bey could be found guilty even if he did not physically deliver the narcotics, if the jury found beyond a reasonable doubt that Bey and Howard were acting in concert,[2] and the judge went on to carefully explain the nature of a conspiracy.

We find that there was sufficient independent evidence of a conspiracy to warrant the admission of the hearsay statement and that the trial court did not err in submitting all counts of the indictment to the jury for its determination of guilt or innocence. For these reasons, the judgment of the district court will be affirmed.

2. "In this case, if you find beyond a reasonable doubt that Stevenson Stone Bey, as the Government contends, negotiated the sale of heroin and cocaine with the intent that Frederick Howard should be the agent to deliver them and receive payment therefor, and in that manner cooperated with each other for the purpose of selling narcotic drugs, you will have determined their joint participation in the offenses charged which, in effect, renders Stevenson Stone Bey responsible for all the acts of Frederick Howard which were performed in the pursuance of their common · design. If, on the other hand, you do not find that the defendant, Stevenson Stone Bey, acted in concert with Frederick Howard with the common purpose of selling narcotics in mind

he could not be found to have committed any of the offenses charged in the indictment, and if you do not believe beyond a reasonable doubt that he acted other than as an accommodation for the buyers in any transaction, even though his acts may have constituted him an intermediary with a seller, he would not be guilty of the offenses charged in the indictment for he is not charged as one acting in concert with the buyers. In order to convict, you must find that he was engaged in a common design with another for the purpose of selling."