**UNITED STATES of America**

**v.**

**Angelo GRASSO, Benito Onorato, Dino Onorato, Robert Gwinnett, Anthony Spagnoli.**

**Angelo Grasso, Appellant.**

**No. 17492.**

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1970.

Decided Dec. 30, 1970.

As Amended on Denial of Rehearing Feb. 25, 1971.

James A. Scarpone, Hannoch, Weisman, Stern & Besser, Newark, N.J. (Irwin I. Kimmelman, Newark, N.J., on the brief), for appellant Angelo Grasso.

Frederick W. Klepp, Asst. U. S. Atty., Newark, N.J. (Frederick B. Lacey, U. S. Atty., Newark, N.J., on the brief), for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Angelo Grasso was convicted, after a jury trial in the District Court of the District of New Jersey, of having in his possession goods—television sets and radios—stolen while being shipped in interstate commerce, and of conspiracy to possess such stolen goods.[1]  Grasso now appeals, assigning as error certain instruction given to the jury during the course of the trial, portions of the Court's final charge to the jury to which counsel did not object, and the insufficiency of the evidence supporting the verdicts of guilt on each count of the indictment.

The evidence showed that the television sets and radios, valued at over $40,000, were stolen by an unknown person while being transported in interstate commerce.  Direct testimony revealed that sometime after the theft, Grasso's alleged co-conspirator, Benito Onorato, arranged to hide the stolen goods in a garage owned by one Gustave Mayer,[3] pursuant to a scheme Onorato had contrived with Mayer prior to the theft of the shipment in question.  At trial Onorato[4] testified that he and Grasso drove to Mayer's garage and that the trailer load of television sets arrived at the garage immediately thereafter.[5] Mayer testified that during the time the television sets were stored in his garage, he was present while Grasso and Onorato were attempting to raise money to pay for the stolen goods.  Thereafter, the television sets and radios were removed from the garage, and still later the F.B.I. apprehended Grasso and his confederates.

Grasso's first contention relates to the Government's impeachment of its own witness, Onorato, by the introduction of Onorato's inconsistent pre-trial statements.  Grasso concedes that in the circumstances presented here it was proper to permit the Government to impeach Onorato, but he argues that the District Court improperly instructed the jury regarding the purpose of introducing Onorato's prior statements.  On at least two occasions the Court cautioned the jury that Onorato's prior inconsistent statements were to be considered only for the purpose of "neutralizing" Onorato's in-court testimony and "not to establish any facts."  In addition to the instructions given twice during the trial, the Court in its final charge to the jury pointed out that:

> "The purpose of showing these prior contrary statements [made by Onorato] was not for the purpose of proving the truth of such statements, but to discredit or neutralize the effects of such adverse testimony.
>
> Therefore, members of the jury, in considering the testimony of this witness, you are to take into account the prior self-contradictory statements made by him, and to offset the one against the other, where they may have been shown to be contrary.
>
> Thus, you will neutralize the effect of each against the other.  You are to limit the effect of these contradictory statements to this neutralization."

Grasso's attorney, when asked if he wished to take exception to this portion or any other portion of the charge, stated that the Court's instructions were "satisfactory."  However, Grasso now

---

1. 18 U.S.C. § 659; 18 U.S.C. § 371.

3. Prior to trial Onorato had pleaded guilty to participation in the conspiracy with which Grasso was charged.

4. Although there were several Onoratos involved in this case, in the opinion we refer only to Benito Onorato.

5. Onorato testified further that he was surprised to find a shipment of television

sets in the trailer, because he and Grasso were expecting to receive toy dolls.  This portion of Onorato's testimony, which asserted Grasso's innocent intentions, was contrary to Mayer's testimony, and was later impeached by the Government's introduction of Onorato's pretrial statements which demonstrated that both Onorato and Grasso had planned to, and did in fact, store stolen television sets in Mayer's garage.

complains that the Court's instructions to the jury during trial and the Court's final charge were inadequate, because the Court did not include therein language to the effect that Onorato's prior inconsistent statements "could have no legal tendency to establish the truth of their subject matter."

Rule 30 of the Federal Rules of Criminal Procedure states, "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Nevertheless, we are urged to treat the District Court's instructions as plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. This Court's power under Rule 52(b) is discretionary and may be exercised only to prevent a manifest miscarriage of justice. United States v. Provenzano, 334 F.2d 678, 690 (3rd Cir. 1964); see Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); United States v. Restaino, 405 F.2d 628, 630 (3rd Cir. 1968); United States v. Casavina, 368 F.2d 987 (3rd Cir. 1967). Although the Court's instructions during the trial and its final charge to the jury may not have contained language strong enough to satisfy Grasso's attorney at the time of the appeal, at trial he did not find such omission worthy of an objection.[6]

We cannot agree that the choice of words employed by the District Court in this case rises to the level of plain error, particularly when on three separate occasions the Court clearly warned the jury not to consider Onorato's prior inconsistent statements as probative of facts contained therein, but only to "neutralize" Onorato's direct testimony.

Turning to Grasso's second contention, we encounter again the interdiction of Rule 30. In its final charge the Court instructed the jury that if they should find as a fact that Grasso had possessed the stolen goods, either "actively" or "constructively," they might infer an essential element of the crime—that Grasso knew the television sets were stolen. Grasso now argues that there was no evidence demonstrating his direct possession of the stolen goods, and thus the jury must have inferred "knowledge" on the part of Grasso from his co-conspirator's possession of the television sets. It is contended that such an inference, when drawn from "constructive" possession, is impermissible. In support of this argument, Grasso cites United States v. Russo, 123 F.2d 420 (3rd Cir. 1941).

*Russo*, however, is distinguishable from the present case. The defendant in *Russo* was a partner in a garage and trucking business. His responsibilities involved primarily truck driving. Russo had little reason to enter the garage operated by the partnership, and in fact did so only occasionally. Although cartons of stolen cigarettes were stored in trucks that were parked inside the garage for several days, there was no evidence whatsoever that Russo had entered the garage while the trucks containing the stolen cigarettes were there, nor was there any evidence at all indicating that Russo knew contraband was being concealed in the garage. Not only was the prosecution unable to produce any evidence which might support an inference of Russo's guilty knowledge, but also the transcript of the trial contains direct evidence given by Russo that he had not entered the garage during the relevant time and was completely unaware that merchandise had been hidden therein. Hence, the *Russo* panel held no more than when the only proof of a defendant's guilty knowledge is his participation in an innocent business relation-

---

6. In his brief Grasso's attorney admits he did not object to the Court's final charge to the jury, but claims he objected to the cautionary instructions regarding Onorato's impeachment given during the course of trial. Such objections do not appear in the transcript; and no attempt was made here to invoke Rule 36 of the Fed.R.Crim.Proc., providing for the correction of mistakes in the record.

ship, there is insufficient evidence to support a conviction. Certainly, there is a substantial difference between allowing the jury, as the court did in *Russo,* to find solely on the basis of a commercial partnership that the defendant knew the goods in question were stolen, and giving the jury a charge such as the one at Grasso's trial.

In addition the *Russo* panel was careful to distinguish a line of cases sustaining convictions when " \* \* \* there were other circumstances shown from which the jury, without any consideration being given to the implied possession, could properly infer that the defendants had guilty knowledge." 123 F.2d at 422. The case before us contains a number of instances in which the evidence tends to connect Grasso directly with the stolen television sets. There was testimony by Onorato placing Grasso at the storage site of the contraband, and evidence was given by Mayer, the owner of the garage in which the stolen goods were stored, that Grasso and Onorato had attempted to raise money to pay for the stolen television sets. Also, there was evidence which demonstrated that Grasso and Onorato were acting in concert according to a pre-arranged plan and that Onorato had accomplished the secret storage of the stolen goods. Under these circumstances, the principles of *Russo* are inapplicable to Grasso's case.

■ We do not now decide whether the final instructions given to the jury by the Court were an accurate and adequate statement of the law regarding the inferences to be drawn from constructive possession, but we do hold that any error contained in such instructions did not cause a miscarriage of justice [7] —the requirement to invoke Rule 52.

In light of the fact that Grasso made no attempt to bring the error he now alleges to the attention of the Court, as mandated by Rule 30, we decline at this time to decide the issue, except insofar as we hold the Court's instructions did not contain plain error.

Grasso's last contention is that the evidence adduced at trial was insufficient to support the verdicts. We have read the record with care, and although this is a close case, we find the evidence sufficient to uphold the jury's verdict on both counts of the indictment. Such evidence, which on appeal from a jury verdict must be construed in favor of the Government, Noto v. United States, 367 U.S. 290, 296–297, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961); United States v. Schwartz, 390 F.2d 1, 2 (3rd Cir. 1968), may be summarized as follows. Onorato testified that he and Grasso planned to be, and were in fact, present at Mayer's garage at the time the contraband was delivered there. Any possibility that Onorato's and Grasso's presence at the garage at the time the stolen television sets arrived might have been mere coincidence was dispelled by Mayer's testimony that Onorato had arranged with Mayer prior to the delivery of the contraband to secrete the television sets in Mayer's garage. Benito Onorato testified that Grasso was present at Mayer's garage when the contraband was delivered and this was corroborated by testimony of one John Mason who observed Grasso's automobile at Mayer's residence at the relevant time. Finally, Mayer testified that he was present when Grasso and Benito Onorato were attempting to raise money to pay for the contraband in question.

Accordingly, the judgment of the District Court will be affirmed.

---

7. In United States v. Casalinuovo, 350 F.2d 207, 211 (2nd Cir. 1964), the Second Circuit held that a presumption of guilty knowledge was merely "weakened" when the possession was constructive rather than actual. In the case now before our Court we are concerned only with the application of an inference drawn from constructive possession. If a jury may presume guilty knowledge from constructive possession, *a fortiori* it may infer guilty knowledge from constructive possession.

HASTIE, Chief Judge (dissenting).

The crimes of which the appellant has been convicted are (1) conspiracy to receive and possess goods stolen from interstate commerce and (2) possessing such goods, both in violation of section 659 of Title 18, United States Code. The evidence established that the goods in question were in fact stolen. But the appellant could not be guilty of either crime if he was unaware of that fact.

On this crucial element of the case the court charged as follows:

"And if you find that the defendants were in possession, whether active or constructive, of the stolen television sets, you may infer that the defendants knew that the television sets were stolen, since it has been stipulated that the truck was actually stolen with the television sets on them the night before the arrest."

The instruction was plainly incorrect. This court held, unequivocally, in United States v. Russo, 1947, 123 F.2d 420, that an inference of knowledge that goods were stolen could not lawfully be drawn from constructive possession. This rule reflects the concept that, in the process of proof beyond reasonable doubt, possession, itself merely inferred from some other fact, may not fairly be made the basis of a second inference of guilty knowledge.

In this case there was no testimony that Grasso was ever in possession of the goods. Thus, the jury could only have inferred possession from some other circumstance. Yet the jury was charged that this was enough to warrant an inference of guilty knowledge as well.

The majority opinion reasons, as the government argued, that the jury might have concluded that other evidence provided sufficient circumstantial proof of guilty knowledge without resort to any inference from constructive possession. But that circumstantial proof was weak at best, apparently because a key witness for the prosecution did not supply such probative testimony as the prosecution had reason to anticipate from him.

Thus, the jury may well have based its essential finding of guilty knowledge upon the erroneous instruction that "constructive possession" justified an inference of knowledge that the goods were stolen. Accordingly, I do not see how the conviction can stand.

I would set aside this conviction and remand the case for a new trial.