**UNITED STATES of America**

**v.**

**Robert Howard BROWN a/k/a Howard Brown, Appellant.**

**No. 71–1497.**

United States Court of Appeals,
Third Circuit.

Submitted under 3rd Cir. Rule 12(6)
Dec. 14, 1971.[1]

Decided Feb. 18, 1972.

[1.] Effective September 1, 1971, this court adopted its Rule 12(6), providing as follows:

"(6) *Oral Argument.* Oral argument may be dispensed with, or shortened, by an unanimous order of the panel to which the case has been assigned. The clerk shall notify in writing the parties or their counsel of any such action."

This rule was published in the Pittsburgh Legal Journal, among other legal publications in this Circuit, on August 24, 1971, and copies of it were mailed to all those who had secured copies of this court's Rules from the Clerk. See, also, September 20, 1971, Advance Sheets of Federal Reporter (Second Series), p. LXIII. When appellant filed his brief on September 28, 1971, notice of Rule 12(6) had been available to him for over a month and he had the opportunity to file a reply brief to appellee's brief filed November 1, 1971, in anticipation that oral argument might not be available to him. On December 2, 1971, by unanimous decision of the panel assigned to dispose of this appeal, an order was entered directing that this case be determined without oral argument under Rule 12(6), and notice of this decision was sent to counsel on December 2, 1971. On December 8, 1971, appellant filed a motion "for leave to present oral argument in support of his appeal in spite of the direction of the court that no oral argument shall be held pursuant to Rule 12(6)." This motion is being denied. See Huth v. Southern Pacific Company, 417 F.2d 526, Part I (5th Cir. 1969); Carrington, Crowded Dockets in the Courts of Appeals: The Threat To The Function of Review and National Law, 82 Harv.L.Rev. 542, 556–561 (1969); Christian, Using Prehearing Procedures To Increase Productivity, 52 F.R.D. 55 (1970).

**570**

Wendell G. Freeland, Lichtenstein & Bartiromo, Pittsburgh, Pa., for appellant.

Charles F. Scarlata, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before VAN DUSEN and HUNTER, Circuit Judges, and LAYTON, District Judge.

## OPINION OF THE COURT

PER CURIAM:

This appeal challenges an April 29, 1971, judgment of conviction and commitment based on a jury verdict finding defendant guilty of a one-count indictment charging the defendant with assaulting, resisting, and interfering with the United States officers of the Bureau of Narcotics and Dangerous Drugs while engaged in the performance of their official duties, in violation of 18 U.S.C. § 111. One such officer was shot by defendant about midnight when he was in the process of ejecting his local Police Chief from his home,[2] after such Chief had informed him that there were federal narcotics agents outside who wanted to see him. Thereafter, there were sounds of water running in the house and 30 minutes later defendant came out and surrendered.

2. During the struggle between the Police Chief and defendant, the federal agents had come up on the porch and said, "Police, drop the gun. Federal Agents, drop the gun."

Defendant objects to the Government's referring in its opening and closing arguments to the circumstances which led the agents to Brown's residence, namely, the belief that Brown possessed heroin [3] and that, after a search warrant for the premises had been secured the next morning, the presence of heroin in a drainpipe from the laundry sink and in a glass jar found in an upstairs closet was determined. After a careful consideration of the record, we can find no reversible error in the rulings of the trial judge admitting this evidence [4] and permitting the above-described arguments. See United States v. Todaro, 448 F.2d 64, 67 (3d Cir. 1971), and cases there cited; United States v. Ferrone, 438 F.2d 381 (3d Cir. 1971).

Secondly, defendant contends that his motion to suppress the gun and the heroin residue should have been granted. The Affidavit for Search Warrant justified the search for heroin and the gun.[5] See United States v. Singleton, 439 F.2d 381 (3d Cir. 1971); cf. United States v. Harris, 403 U.S. 573, 577–583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

Finally, defendant claims that a new trial is required due to the admission in evidence of a prior consistent statement made by a Government witness in a state court hearing five days after a prior inconsistent statement by such witness had been testified to by a defense witness.[6] Particularly in view

---

3. Also Brown was referred to in the following wording as "a heroin trafficker" at one place in the prosecutor's closing argument concerning the reasonableness of his using a gun (see footnote 4 below) when asked to talk to the federal narcotics agents:

"Did Brown do what was reasonable? I have to answer that question twice. I suppose for a heroin trafficker, perhaps he did do what was reasonable. For a citizen, no, he didn't do what was reasonable.

"And the question of reasonableness is not so much the reasonableness of his act as the reasonableness of his belief."

As noted above, heroin was found in the drainpipe and glass jar in the defendant's house. Furthermore, earlier during the evening of the shooting of the federal officer, defendant's wife had driven from his home in a car containing two jars containing lactose (a cutting agent for heroin) and had been arrested as a result of the receipt from a government informant of information that she was to make a delivery of narcotics that evening (see footnote 5 below).

4. We note that the evidence was also admissible to refute the defense that Brown acted reasonably in shooting the agent because he believed he was being robbed, see United States v. Antrobus, 191 F.2d 969, 971 (3d Cir. 1951), cert. denied, 343 U.S. 902, 72 S.Ct. 637, 96 L.Ed. 1321 (1952), and was a necessary *ingredient* in explaining the crime in question. See United States v. Bozza, 365 F.2d 206, 212–214 (2d Cir. 1966); Hanks v. United States, 388 F.2d 171, 174–175 (10th Cir.

1968), cert. denied, 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131 (1968).

5. The receipt of information from "an informant under the supervision of the Bureau of Narcotics and Dangerous Drugs" to whom a number had been assigned and who allowed the Special Agent to monitor the call from defendant, stating that "two pieces" (heroin) would be delivered to the informant at a certain restaurant by defendant's wife, confirmation of defendant's name, address and phone number as revealed by the informant, observation of the wife leaving defendant's home in her car and proceeding toward the restaurant, the finding of jars of lactose (a substance used as a cutting material for heroin) in the back of the car, and the informant's statement that defendant told him he had $40,000. of heroin in his possession, constituted sufficient information. As to the gun, it is not necessary to rule on the Government's contention that no warrant was needed to seize a gun which could be used, and had already been used once, to inflict harm on law enforcement agents because the search warrant was valid. See Chimel v. California, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

6. On direct examination the Government witness (a local Police Chief) testified that while he was backing out of defendant's front door, "the door sort of closed and as I was getting out of a crouched position, the door opened and that is when the shot was fired" (N.T. 157). The defense witness (a local reporter) testified that the Police Chief had told him a few

of the curative instruction given by the trial judge, we have concluded that this contention must be rejected. See IV Wigmore, Evidence (3d Ed.), § 1126, p. 202; United States v. DeLarosa, 450 F.2d 1057 (3d Cir., 1971); cf. United States v. Grosso, 358 F.2d 154, 158 (2d Cir. 1966), rev'd on other grounds, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

The April 29, 1971, judgment will be affirmed.

hours after the shooting, "I grabbed the barrel and was pushing it downward when he pulled the trigger and the rifle fired" (N.T. 316). The reporter also testified that the Police Chief had given the fol-lowing testimony at a Magistrate's hearing five days after the shooting: "I then let go of the barrel and was backing out of the door when he fired the rifle. It struck the agent." (N.T. 327).