UNITED STATES of America

v.

Dennis W. VAN ORDEN et al.,
Appellants.

No. 72-1062.

United States Court of Appeals,
Third Circuit.

Argued June 13, 1972.

Decided July 10, 1972.

Rehearing Denied Oct. 24, 1972.

**462**

John G. Graham, McGlynn, Ruprecht & Graham, Newark, N. J., for appellants.

David R. Hinden, Asst. U. S. Atty., Herbert J. Stern, U. S. Atty., Newark, N. J., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

On May 4, 1971, Dennis W. Van Orden was brought to trial in the district court, along with a co-defendant, Nathaniel Jefferson Tookes ("Tookes"), on a three-count indictment charging him with possession and transfer of counterfeit twenty dollar Federal Reserve Notes in violation of 18 U.S.C. §§ 472, 473 and 2. After the joint trial of Van Orden and Tookes had begun, Tookes retracted his not guilty plea and entered a guilty plea to Count I of the indictment. Tookes was severed from the trial and Van Orden's trial was continued before the same jury. On May 6, 1971, the jury found Van Orden guilty on all three counts of the indictment and on July 8, 1971, Van Orden was sentenced to three years' imprisonment on each count, to be served concurrently. Van Orden appeals from his conviction and sentence. We find that none of the errors alleged either by Van Orden's counsel or by Van Orden himself warrants reversal on the record before us and, therefore, affirm Van Orden's conviction.

### I.

The testimony adduced at trial revealed that on April 25, 1969, an unidentified informant and Agent Miller, an undercover agent with the United States Secret Service, met Tookes and Willie Jefferson ("Jefferson") outside of the Addison Restaurant and arranged to purchase counterfeit twenty dollar bills. Tookes asked for the purchase price in advance because "his guy wanted the front money up front before any delivery would be made" (N. T. 23). When Agent Miller refused to pay in advance, Jefferson and Tookes borrowed money from several others in the area. Tookes then went inside the Addison Restaurant and made a telephone call. Another undercover agent overheard Tookes ask

for "Butch" and then say: "Butch, I will be over in approximately 20 minutes to pick up the package" (N. T. 2.9). Tookes and Jefferson then drove to Tony's Tavern, where Tookes went inside and returned with the package of counterfeit twenty dollar bills. Both men then proceeded back to the vicinity of the Addison Restaurant where they were arrested by Secret Service Agents after they delivered the bills to Agent Miller.

After their arrest, Jefferson and Tookes were brought to the Secret Service office in Newark. Jefferson indicated to the agents that the counterfeit bills had been picked up at Tony's Tavern on consignment and that they were expected to return to Tony's Tavern after the deal was completed to pay Tookes' source. When Agent Moore, one of the agents who interviewed Jefferson at the Newark office of the Secret Service, learned from another agent that Tookes had placed a telephone call to a man named "Butch," he was reminded of a "Butch" Van Orden whom he had talked with some months earlier concerning counterfeit bills made from the same plates as those used to make the counterfeit bills passed by Tookes and Jefferson. Agent Moore had spoken with Van Orden several times and had monitored several telephone conversations between Van Orden and another special agent. During these talks Van Orden was shown several of the counterfeit bills but had denied knowing anything about them. Acting on the suspicion that the "Butch" that Tookes had spoken to at the Addison Restaurant might be Van Orden, Agent Moore requested and received Jefferson's cooperation in having Jefferson make a telephone call to "Butch" at Tony's Tavern. Pursuant to Agent Moore's instructions, Jefferson asked for "Butch," identified himself as Tookes to the party answering as "Butch," and told him that "everything went along all right down there and I

will be over with the money" (N. T. 73). "Butch" responded by telling Jefferson to "make it in a hurry" and then declaring that "I will be on the inside of the tavern" (N. T. 73). Agent Moore recognized the voice at the other end of the line as that of Van Orden and accordingly directed Agent Miller to arrest Van Orden. Miller proceeded to Tony's Tavern and arrested Van Orden inside the tavern. At the time of arrest, Van Orden was carrying a loaded automatic revolver and a counterfeit twenty dollar bill mixed with some other bills in his pocket. This counterfeit bill was made from the same plate as the bills which had been previously shown to Van Orden by Agent Moore, as well as the bills which Jefferson and Tookes had attempted to sell to Agent Miller that evening.[1]

## II.

Van Orden's counsel has advanced these arguments, among others, on appeal. First counsel argues that the trial court erred in allowing into evidence various conversations between Tookes, Jefferson and several agents of the Secret Service which occurred some weeks prior to the date of the crime alleged in the indictment and which involved a prior sale of counterfeit notes by Tookes and Jefferson. Counsel argues that it was error to introduce this evidence at Van Orden's trial because it constituted a prejudicial variance from the crime charged in the indictment and the conversations were not in furtherance of a criminal conspiracy of which Van Orden was shown to have been a member. We find no merit to these arguments because (1) at the time that these conversations were introduced, Tookes and Van Orden were being jointly tried and the conversations were plainly relevant to the prosecution's case against Tookes; (2) Van Orden's counsel asked for and received a

1. Counts I and II of the indictment charged Van Orden with illegal transfer and possession, respectively, of the counterfeit bills which Jefferson and Tookes had attempted to sell to Agent Miller. Count III charged Van Orden with illegal possession of the counterfeit bill found on his person at the time of his arrest.

limiting instruction to the jury at the time that this testimony was introduced and made no objection at all to the instruction given by the court; (3) when Tookes was severed from Van Orden's trial after he pleaded guilty, Van Orden's counsel made no effort to have these conversations stricken by the court; and (4) the introduction of this evidence and the district court's failure to strike it *sua sponte* under these circumstances were not plain error. See F.R.Crim.P. 52(b).

■ Also, counsel for Van Orden argues that the district court erred in allowing evidence of conversations between Tookes, Jefferson and a special agent of the Secret Service on the date of the offense charged in the indictment. There is no merit to this argument because (1) no objection to this testimony was made by Van Orden's trial counsel and (2) from the facts, which we must view in the light most favorable to the Government in view of the jury's finding of guilt, it appears that Van Orden was involved in the conspiracy to sell the counterfeit bills at this time, so that the conversations were admissible against Van Orden under the co-conspirator exception to the hearsay rule to the extent that such conversations were hearsay. *See, e. g.,* United States v. Weber, 437 F.2d 327, 336 (3d Cir. 1970), cert. denied, 402 U.S. 932, 91 S.Ct. 1524, 28 L. Ed.2d 867 (1971); United States v. Williams, 435 F.2d 642, 645 (9th Cir. 1970), cert. denied, 401 U.S. 995, 91 S.Ct. 1241, 28 L.Ed.2d 533 (1971).

■ Counsel for Van Orden also argues that, even if these conversations were properly admitted, the court's charge to the jury was insufficient to indicate what the jury must find before it could use these statements as evidence of Van Orden's guilt. Since Van Orden's counsel at trial affirmatively indicated that he had no objection to the district court's charge (see N. T. 356), we may reverse only upon a showing of "plain error." F.R.Crim.P. 30, 52(b);

United States v. Grasso, 437 F.2d 317, 319 (3d Cir. 1970). It is clear from the record that the district court's charge did not constitute such error, since once the district court determines that the statement is properly admitted under the co-conspirator exception to the hearsay rule, no instruction to the jury is necessary. See United States v. Bey, 437 F.2d 188, 191 (3d Cir. 1971).

■ Next Van Orden's counsel argues that it was error to admit evidence of the conversations that Van Orden had with the agents of the Secret Service some months prior to the date of the offense charged in the indictment when there was no showing that Van Orden had received proper *Miranda* warnings. These conversations were relevant to show Van Orden's exposure to the same type of counterfeit bills which Van Orden was charged with possessing and passing and to demonstrate the source of Agent Moore's familiarity with Van Orden's voice (*cf.* United States v. Brown, 456 F.2d 569, 571 at note 4 (3d Cir. 1972), and cases there cited); Van Orden's own statements to the agents at this time were completely exculpatory. Here again counsel for Van Orden made no objection at trial to this evidence (indeed he drew the jury's attention to Van Orden's exculpatory statement during his summation (N. T. 3.12)) and it is clear that its introduction did not constitute plain error. See United States v. Sanchez, 422 F.2d 1198, 1201 (2d Cir. 1970); Sweeney v. United States, 408 F.2d 121 (9th Cir. 1969); *cf.* Schmerber v. California, 384 U.S. 757, 762–765, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Gilbert v. California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1966).

■ Finally, counsel for Van Orden argues that in his summation the prosecutor wrongfully and prejudicially expressed his personal belief in the guilt of the defendant Van Orden and personally identified with the law enforcement officers who had testified against Van

Orden.[2] Although we do not approve of these somewhat intemperate remarks by the prosecutor, we are convinced that they are not grounds for a new trial under the circumstances of this case, particularly since, even if there was an indirect expression of the prosecutor's belief in Van Orden's guilt, there was no suggestion that this belief was based upon evidence other than that introduced at the trial, and we cannot say that Van Orden was prejudiced by these remarks. See F.R.Crim.P. 52; Lawn v. United States, 355 U.S. 339, 359–360 n. 15, 78 S.Ct. 311, 2 L.Ed.2d 321 (1957); Patriarca v. United States, 402 F.2d 314 (1st Cir. 1968), cert. denied, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969); United States v. Lawson, 337 F.2d 800, 809 (3d Cir. 1964), cert. denied, 380 U.S. 919, 85 S.Ct. 913, 13 L. Ed.2d 804 (1965).

### III.

■ In addition to the arguments advanced in his brief to this court, Van Orden's counsel has submitted two additional issues which Van Orden requested him to add to his appeal to this court. First, it is argued that the district court erred in denying defendant's motion for a judgment of acquittal because the Government failed to establish a prima facie case of Van Orden's guilt of the offenses charged. There is no merit to this argument, since the evidence adduced by the prosecution was sufficient to sustain the jury verdict of guilty.

■ The second issue raised by Van Orden involves comments made by the district court at the beginning of defendant's case. Counsel for Van Orden indicated to the court that Tookes, the former co-defendant who had earlier pleaded guilty to Count I of his two-count indictment, had expressed a desire to testify for Van Orden but declared that he (Van Orden's counsel) did not think that Tookes should testify without consulting his own attorney, Mr. Russel. At this point the following colloquy took place:

> "THE COURT: No, I think we ought to have Mr. Russel appear. And of course we did take a plea on one count, and if he wants to testify I suppose nobody can stop him from testifying. But nobody can stop us from moving the other two counts on him, too.

> "MR. PALMIERI [Prosecutor]: There is only one count.

> "THE COURT: The other one count too." (N. T. 2.56–2.57)

The court then recessed the case until the next morning to give Tookes an opportunity to contact his lawyer. N.T. 2.57. Tookes did not ultimately testify for the defense.

Van Orden argues that the district court erred in threatening Tookes with prosecution on other counts of the indictment if he should testify for Van Orden's defense and thereby prevented Tookes from testifying. Since counsel for Van Orden made no objection at his trial to these comments by the trial judge concerning Tookes' testifying,[3] this court may reverse Van Orden's conviction only if these comments constituted "plain error." F.R.Crim.P. 51, 52. See, e. g., Government of Virgin Islands v. Smith, 445 F.2d 1089, 1094 (3d Cir. 1971); United States v. Jenkins, 442 F. 2d 429, 435 (5th Cir. 1971); United

2. In his summation to the jury, defense counsel characterized the testimony of the Secret Service agents as a "cock and bull story" and questioned whether conversations reported by these agents had ever taken place. See N.T. 3.12–3.15. In his own summation, the prosecutor declared that he personally resented defense counsel's claim that "Agent Moore was not telling the truth," since it was "an attack upon the integrity of the force of which I am a part." N.T. 3.27. No objection by Van Orden's counsel was made to these remarks, although he had raised objection to the prosecutor's earlier suggestion that he had called the Government witnesses liars.

3. We note that the jury was not present at the time of the trial judge's comments. See 8A Moore's Federal Practice, ¶ 51.02 at 51–2 to 51–3 and n. 5.1 (1972).

466

States v. Fairchild, 435 F.2d 972, 973 (10th Cir. 1971); United States v. Mc-Cray, 140 U.S.App.D.C. 67, 433 F.2d 1173, 1175 n. 1 (1970); 8A Moore's Federal Practice, ¶¶ 52.02[2], 52.03[1] (1972). We cannot say that these remarks constitute plain error on the basis of the record before us, since there is no evidence in this record (1) that Tookes or his attorney was present at the precise time when these remarks were made, (2) that the remarks were communicated in any way to Tookes or his attorney, or (3) that Tookes' failure to testify was influenced by these remarks. *See* United States v. Green, 139 U.S.App.D.C. 75, 429 F.2d 754, 761–762 (1970).

For the foregoing reasons, the judgment of conviction will be affirmed.