**UNITED STATES of America**

v.

**Luis Donato RODRIGUES,**
**Appellant, et al.**

**No. 14753.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 6, 1973.

Resubmitted Jan. 30, 1974.
Under Third Circuit Rule 12(6).

Decided Feb. 20, 1974.

Schapira, Steiner & Schapira, Saul A. Wolfe, Newark, N. J., for appellant.

Herbert J. Stern, U. S. Atty., Richard S. Zackin, Asst. U. S. Atty., Newark, N. J., for appellee.

Before STALEY, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

Luis Donato Rodrigues, a citizen of Portugal, was tried to a jury in the district court and was convicted of conspiracy to defraud the United States in a matter concerning the Immigration and Naturalization Act in violation of Title 18 U.S.C. § 371. Specifically, the indictment charged that he and three others conspired to arrange a marriage ceremony between himself and an American woman, one of three other indicted co-conspirators, solely to enable him to achieve the status of permanent resident alien upon the representation that he was the alien spouse of a United States citizen.

Upon ordering a transcript of the proceedings in the district court, counsel for the appellant discovered that the stenographic notes of the trial taken by the official court reporter had been lost. The aspects of this case related to the lost transcript have been twice before this court and twice we have remanded appellant's cause for the purpose of reconstructing the record and determining whether he would be prejudiced in going forward with the appeal.

A partial record was reconstructed from tape recordings of the trial made by the court reporter for his own purposes. However, only a portion of the trial was available on tape. We have before us an appeal on the merits with a record consisting of an uncertified partial transcript taken from tapes.

The notes of testimony taken from the aforementioned tape recordings reveal that the woman who married the appellant pursuant to the alleged conspiracy testified on behalf of the Government. She stated that two meetings took place at her home during which the sham marriage scheme was first presented to her.

On appeal the appellant argues, *inter alia*, that the admission of the woman's versions of conversations which included declarations of the appellant's co-conspirators without a limiting instruction by the court was reversible error.

■ Declarations of one conspirator made in the absence of another conspirator may be used against the other on the theory that the declarant is the agent of the absent conspirator. Lutwak v. United States, 344 U.S. 604, 617, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

"However, such declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof *aliunde* that he is connected with the conspiracy. [Cita-

tions omitted.] Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence." Glasser v. United States, 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

The Supreme Court has emphasized the importance of rulings on the admissibility and bearing of declarations of conspirators.

"Perhaps even at best the safeguards provided by clear rulings on admissibility, limitations of the bearing of evidence as against particular individuals, and adequate instructions, are insufficient to ward off the danger entirely. It is therefore extremely important that those safeguards be made as impregnable as possible." Blumenthal v. United States, 332 U.S. 539, 559–560, 68 S.Ct. 248, 257, 92 L. Ed. 154 (1947).

With these principles in mind, we turn to an examination of the testimony of Leonore Rodrigues, the wife of the appellant.

Speaking through an interpreter, Leonore Rodrigues stated that in April 1959, one Emmanuel Rodrigues (no relation) visited her home and presented a proposal that she marry a Portuguese citizen. According to her testimony, Emmanuel explained that the marriage would be one of form only. They were not to live together as man and wife. For this service Leonore was to be paid $600. It is clear that the appellant was not present during this first conversation.

During the second meeting, which took place on the day following the first, Emmanuel and the appellant's sister, Lucinda Marinho, spoke with Leonore regarding the proposed sham marriage. The testimony of Leonore on the question whether appellant was present at the second meeting is ambiguous and unclear. As to whether this lack of clarity is due to the language barrier or is attributable to a poor recording from which the partial transcript was made, we can only speculate.

Leonore's testimony regarding the second meeting began with the following exchange on direct examination:

"Q. Did you have occasion to see Emmanuel Humberto Rodrigues again?

"A. The following day he came to my home with Lucinda.

"The Interpreter: That is her brother."

This response is unclear because Lucinda, one of the conspirators, is Luis' sister, not Emmanuel's. Shortly thereafter, counsel and the court inquired as follows:

"Q. Did you have a conversation with Emmanuel Humberto Rodrigues, Luis Donato Rodrigues and Lucinda Marinko [sic] on the occasion of the second visit?

"Mr. Sommer: May we have the time fixed?

"Mr. Levin: I think she said it was the day after the first conversation.

"The Court: The day after the first conversation?

"A. Yes."

Although counsel's question assumed the presence of all four conspirators, the witness's affirmative reply was apparently not in response to that question. Rather, it was in answer to the court's question regarding the time of the meeting. The only time Leonore specifically placed appellant at the second meeting was in the following inconsistent answers:

"Q. And were those conversations she has related said in the presence of all three defendants?

"A. Yes.

"Q. When was the next occasion you saw either Emmanuel, Luis or Lucinda?

"A. The following day.

"Q. What happened the following day?

"A. I was introduced to that man.

"Q. After that, when was the next time after that?

"A. I think we went to get a blood test."

To whom was Leonore introduced on the day following the second meeting if not the appellant? Leonore testfied that during the second meeting Lucinda Marinho, the appellant's sister, repeated essentially what Emmanuel had proposed the day before.

Appellant Rodrigues contends that the district court committed plain error in failing to instruct the jury regarding the circumstances under which it could consider the declarations of the appellant's alleged co-conspirators as evidence against him. We reject this contention. This court has recently stated: " * * * once the district court determines that the statement is properly admitted under the co-conspirator exception to the hearsay rule, no instruction to the jury is necessary." United States v. Van Orden, 469 F.2d 461, 464 (C.A. 3, 1972); see United States v. Bey, 437 F.2d 188, 191 (C.A. 3, 1971); Carbo v. United States, 314 F.2d 718 (C.A. 9, 1963). In order to be properly admitted under the co-conspirator exception to the hearsay rule, there must be independent evidence linking the declarant to the defendant. "The trial judge has wide discretion and need only be satisfied, if he accepts the independent evidence as credible, that such evidence is sufficient to support a finding of joint undertaking." United States v. Bey, 437 F.2d 188, 190–191 (C.A. 3, 1971).

In the instant case, the ambiguous testimony set forth above and the un-

availability of a full transcript make it impossible for us to determine whether there did exist independent evidence of the conspiracy. Under these circumstances we believe a new trial is proper. See, Parrott v. United States, 314 F.2d 46 (C.A. 10, 1963); Stephens v. United States, 289 F.2d 308 (C.A. 5, 1961).·

The judgment of the district court will be reversed and the cause remanded for a new trial.

———◆———

ADAMS, Circuit Judge (concurring):

I agree that the district court's judgment should be reversed. However, in my view such reversal should not be predicated upon *possible* infirmities resulting from the admission of co-conspirator statements,[1] when there is an error which more clearly warrants a new trial.

Rodrigues contends that the trial court erred in failing to instruct the jury as to the essential elements of the crime with which he was charged and of which he was convicted. The government maintains that Rodrigues is barred by Rule 30, Federal Rules of Criminal Procedure, from complaining of this omission, since his counsel voiced no objection at trial.[2] The interdiction of Rule 30, however, is inoperative regarding this asserted error.

In Screws v. United States,[3] the Supreme Court held that where a trial court fails "to submit to the jury the essential ingredients of the . . . offense . . . it is necessary to take note of it on our own motion."[4] Stated otherwise, the omission from jury instructions of an explanation of all the

---

1. The majority, invoking United States v. Bey, 437 F.2d 188 (3d Cir. 1971), rejects Rodrigues' claim that the failure of the court to instruct the jury regarding the admissibility of co-conspirator statements was error.

I, too, would reject this contention of Rodrigues because, irrespective of the rule of *Bey*, no objection was made at trial to this asserted error in the instructions. Rule 30, F.R.Cr.P., thus bars our consideration of such omission on this appeal. *Cf.* United States

v. Provenzano, 334 F.2d 678, 690 (3d Cir.), cert. denied 379 U.S. 947, 85 S.Ct. 440, 13 L. Ed.2d 544 (1964).

2. Rule 30 bars consideration of errors in a trial court's instructions that were not objected to before the jury retired. *See* Note 1, *supra*.

3. 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

4. *Id.* at 107, 65 S.Ct. at 1038.

necessary elements of a crime is, *per se*, "plain error." [5]

Rodrigues was charged in a one-count indictment with "conspiracy to defraud the United States of and concerning its governmental function," a violation of 18 U.S.C. § 371.[6] In United States v. Vazquez [7] this Court stated that, where an indictment charges conspiracy to defraud the United States under section 371, "fraud is an essential ingredient of the offense." [8] Fraud, in this connection, has been defined by the Supreme Court as "deceit, craft or trickery, or at least [as] means that are dishonest." [9] The gravamen of the offense, then, is the defendant's state of mind —he must be found to possess the intent to defraud, to commit craft, deceit, or trickery, before a conviction will lie. The district court did not so instruct the jury, and such omission, in light of *Vazquez* and its progenitors, was plain error.

This ground for reversal would appear preferable for several reasons. First, as discussed above, the Supreme Court in *Screws* mandated that we consider this type of error, even if raised for the first time on appeal. Second, questions regarding the use of co-conspirator statements, particularly under the rule of *Bey*, *supra*, present grave issues that should only be resolved with a complete record at hand.[10] Finally, it seems that the question of the appellant's intent was, practically speaking, the fulcrum of the government's case. Criminal statutes must be construed and applied *strictissimi juris*, and without a charge on the element of intent, there can be no assurance that the jury so applied section 371 in this case.

Thus, notwithstanding the appellant's failure to object to the lack of instructions setting out each element of the crime, I would conclude that the judgment must be reversed and a new trial ordered.

5. *See* United States v. Massiah, 307 F.2d 62, 71 (2d Cir. 1962), rev'd on other grounds, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Pursuant to rule 52(b), F.R.Cr.P., "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." *See* United States v. Grasso, 437 F.2d 317, 319 (3d Cir. 1970), cert. denied, 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971).

6. Section 371 proscribes two separate offenses to wit, conspiracy to commit an offense against the United States, and conspiracy to defraud the United States. The indictment in this case clearly charged Rodrigues only with the latter crime.

7. 319 F.2d 381 (3d Cir. 1963).

8. *Id.* at 384.

9. Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924).

10. Though as a panel member I joined the majority opinion in *Bey*, I was then, and continue to be, troubled by some of the ramifications of that case. Particularly nettlesome is the question whether *Bey's* rejection of the need for certain limiting instructions comports altogether with the Supreme Court's pronouncements on the co-conspirator rule. *See, e. g.,* Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (particularly the concurring opinion of Justice Jackson) ; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). For example, if, under *Bey*, the jury need not find at least a *prima facie* case of conspiracy on the basis solely of independent evidence, the very "bootstrapping effect" warned against in *Glasser*, 315 U.S. at 75, 62 S.Ct. 457, may occur.